NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

INDUSTRIAL RAYON CORPORATION,
Respondent.

No. 8239.

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1961.

Decided June 12, 1961.

Elliott Moore, Atty., N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin Pollack, Atty., N. L. R. B., Washington, D. C., on brief), for petitioner.

Frank C. Heath, Cleveland, Ohio (Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This petition seeks enforcement of an order of the National Labor Relations Board which directs Industrial Rayon Corporation to bargain collectively with District 50, United Mine Workers, as the representative of the powerhouse and filter plant employees at the Corporation's plant in Covington, Virginia. These employees constitute a separate bargaining unit previously severed from the other employees in the plant under order of the Board; and the question is whether District 50 was properly certified by the Board as their representative since the union does not "traditionally represent" such employees.

From 1937 to 1955 the hourly paid employees at the plant were represented in a single plantwide bargaining unit by Local 202, Textile Workers Union of America, AFL–CIO, and its predecessor organizations. In 1955, Local 922, International Union of Operating Engineers, won a severance election and was certified by the Board as the bargaining representative of the powerhouse and filter plant employees and thereafter successive bargaining agreements covering these employees were executed between the Corporation and the Operating Engineers. In 1958, this union was supplanted by the Virginia Textile Union, Inde-

pendent, as the result of an election in which it participated with the Operating Engineers and the Textile Workers, and thereafter the Corporation entered into an agreement with the Virginia Textile Union.

In September 1959, District 50 filed a petition to represent the same unit of employees and won an election in competition with the Textile Workers and the Virginia Textile Union and was certified by the Board as the representative of the employees in the unit. The Corporation, however, refused to bargain with District 50 on the ground that it did not traditionally represent such employees and was therefore not qualified to represent them. The Board concluded that the Corporation had violated the Act by refusal to bargain and entered an appropriate cease and desist order, which it now seeks to enforce.

It is not disputed that the powerhouse and filter plant employees constitute an appropriate unit for bargaining purposes as certified by the Board, but it is contended that under the Board's decisions the representative of a craft or departmental unit of employees which has been severed from an established bargaining unit must be a union which has traditionally represented such employees in the past; and since District 50 is not such a union it is argued that the order of the Board was improper.

The Board's position on the propriety of creating separate craft units for bargaining purposes has varied from time to time. In American Can Co., 13 NLRB 1252 (1948), the Board rejected the applications of certain craft unions to represent divers groups of skilled workers as separate bargaining units in a large plant in which an industrial union had been chosen by election and had been certified by the Board as the representative of all of the employees. The Board was of the opinion that it lacked the power to split the appropriate unit thus established. Thereafter, by the passage of the Taft-Hartley Act, 29 U.S.C.A. § 151 et seq., Congress indicated its disapproval of the American Can doctrine and

provided in § 9 of the Act, 29 U.S.C.A. § 159, that in order to assure to employees the fullest freedom in exercising their bargaining rights the Board should decide in each case whether the unit appropriate for bargaining purposes should be the employer unit, craft unit, plant unit, or subdivision thereof; and also provided in § 9(b) that the Board should not decide that any unit is inappropriate for such purposes on the ground that a different unit had been established by a prior Board determination unless a majority of the employees in the proposed craft unit vote against separate representation.

The Board considered this legislation in National Tube, 76 NLRB 1199 (1948), and reached the conclusion that this provision in the statute did not require the Board to grant an election to a group of craft employees seeking separate representation and did not limit the Board's discretion in determining the appropriate bargaining unit in any case, so long as its determination was not made on the ground that a different unit had been established by a prior determination of the Board. Accordingly, the Board in that case denied separate representation to members of a craft group in the steel plant since there had been a long history of collective bargaining on the basis of an overall unit in which the craft employees were included and since the steel industry involved highly integrated operations, and any change in the unit governing the bargaining relations between the employer and the employees would be detrimental to the wage-rate structure and have an adverse effect upon its productive capacity in an industry of vital national concern. Similar rulings denying separate craft representation were later made with reference to the wet milling industry, the lumber industry, and the aluminum industry. See Corn Products Refining Co., 80 NLRB 362; Weyerhaeuser Timber Co., 87 NLRB 1076, and Permanente Metals Co., 89 NLRB 804.

Subsequently the Board abandoned this position and announced in American

Potash & Chemical Corp., 107 NLRB 1418 (1954), that thereafter, with the exception of the four industries above mentioned, the severance of a true craft group would be permitted where the unit seeking recognition is a true craft group and the union seeking representative status is one which has traditionally represented the craft in the past. In pursuance of the new policy the Board ordered an employer in the plate glass industry to recognize a craft union as the bargaining representative of a unit composed of electricians although a majority of all the employees as a body had chosen an industrial union to represent them. We had occasion to review this decision in N. L. R. B. v. Pittsburgh Plate Glass Co., 4 Cir., 270 F.2d 167, certiorari denied 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed. 2d 363, wherein we held that the order of the Board was discriminatory and should not be enforced, in that the plate glass industry was highly integrated and had had a long and successful history of collective bargaining on a plantwide basis and was therefore in the same class as the four industries above mentioned as to which the Board had held that the establishment of craft units would not be permitted and the practice of plantwide bargaining would not be disturbed.

In the pending case it is also charged that the action of the Board is arbitrary and improper since it is inconsistent with the decisions of the Board in American Potash and in subsequent cases in which craft unions for separate bargaining units have been certified. In these cases, as we have seen, the severance of a particular group of employees has been permitted only upon the condition that the bargaining representative selected should be a craft union which had been theretofore recognized as a suitable union to represent the group. It was announced in American Potash that this requirement would be rigidly enforced (107 NLRB 1423) and later the purpose of the rule to preserve the independence of the craft and at the same time to minimize conflicts between competing unions was explained in the following language in Libbey-Owens-Fore Glass Co., 115 NLRB 1452, 1457:

"In requiring that severance be granted only where it appeared that the petitioning union was one that traditionally represented the craft sought, the Board's object was to make certain—in the words of Senator H. Alexander Smith—'to preserve the independence of craft unions if the members of the craft so desire.' The logical corollary to this objective was that noncraft unions or unions not devoted by history, tradition, and experience to the special problems peculiar to the specific craft involved would not be permitted to subvert the craft severance policy by using it as a device for raiding or splintering established plantwide units."

The Board's explanation of this change in its policy is set forth in the following excerpts from its opinion in the pending case:

"We find no merit in the Respondent's contention that only a labor organization meeting the standards of the 'traditional union' test is qualified to petition for a craft or departmental unit which has already been severed from a production and maintenance unit and has undergone its own independent bargaining history. One of the fundamental principles underlying the Act is that employees should be permitted to exercise the greatest freedom of choice in the selection of their bargaining representative. * * * American Potash is an exception to the general rule permitting freedom of choice to the employees. As such, it has been narrowly construed by the Board as limited only to severance cases i. e., to situations where a smaller craft or departmental unit is to be carved out of an established broader unit. The Board has consistently held that the traditional craft union test does not apply to unions seeking an election in a craft or departmental unit where there is not prior substantial

bargaining history on a broader basis. The same applies where a craft or departmental unit, as here, has once been severed from a production and maintenance unit and has, since then, developed its own bargaining history.

"Were we to adopt a rule as requested by the Respondent, that a craft or departmental unit once severed can from then on only be represented by a traditional craft union, we would curtail the freedom of choice of the employees unnecessarily by restricting them thereafter to choosing among a limited number of craft unions. We do not believe that it would effectuate the policies of the Act, to thus extend the limitation of the American Potash rule. * * * "

It is obvious that this statement does not furnish an adequate explanation of the Board's change of policy or meet the charge that it is inconsistent and arbitrary to apply the American Potash rule to a craft unit when it is first severed from the main body of the employees but to ignore the rule altogether when a change in the bargaining representative is afterwards proposed. The reasons which underlie the rule are clearly as applicable in one case as in the other. The need of an appropriate and experienced bargaining representative and the desirability of avoiding conflict between industrial unions in the same plant, which are the affirmative advantages of the rule, are pertinent in both situations; and the curtailment of the freedom of choice of a bargaining representative by the employees, which is necessarily inherent in the rule, is no greater in the case of a craft unit which has already been severed than it is in the case of such a unit when it is first severed from the main body of the workers. We are forced to the conclusion that the enforcement of the rule in one instance and the refusal to apply it in the other cannot be rationalized.

The decisions upon which the Board relies to support its claim of consistency are not parallel to its decision in the pending case. It is true that in these instances an industrial union was certified to represent a craft unit but there was no other union in the plant and the advantages to be derived from the introduction of the practice of collective bargaining in the plant were obviously deemed to offset the loss of the representation of the craft unit by a union experienced in the particular field.

■ ■ We reiterate the emphasis set out in our opinion in N. L. R. B. v. Pittsburgh Plate Glass Co., 4 Cir., 270 F.2d 167, 173, upon the breadth of the Board's power and discretion to select the appropriate bargaining unit for the employees in each case and the power of the Board in its discretion to change its policy from time to time in order to effectuate the purposes of the Act and to exercise the choice in its informed discretion to proceed by general rule or by ad hoc decisions. We do not doubt the power of the Board to encourage the creation of small craft units for bargaining purposes in an industrial plant or, on the other hand, to discourage their formation if in either case the purposes of the Act will in the judgment of the Board be promoted, but the Board may not be arbitrary in the promulgation of a policy applicable to any class of cases. See Office Employees International Union, Local No. 11 A.F.L.–C.I.O. v. N. L. R. B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed. 2d 846; Hotel Employees Local No. 255 v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 289.

Accordingly, we reach the conclusion that in the pending case the order of the Board should not be enforced.

Enforcement denied.