**ROYAL McBEE CORPORATION,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 8524.**

United States Court of Appeals
Fourth Circuit.

Argued March 30, 1962.

Decided May 7, 1962.

Ransom A. Ellis, Jr., Springfield, Mo.
(Walker, Daniel, Clampett, Rittershouse
& Ellis, Springfield, Mo., and B. H.
Clampett, Springfield, Mo. on brief), for
petitioner.

Allison W. Brown, Jr., Attorney, National Labor Relations Board (Stuart
Rothman, General Counsel, Dominick L.
Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Judith Bleich Kahn, Attorney,
National Labor Relations Board, on
brief), for respondent.

Before SOBELOFF, Chief Judge, and
SOPER and HAYNSWORTH, Circuit
Judges.

SOPER, Circuit Judge.

This case comes before us on petition
to review an order of the National Labor
Relations Board which required the
Royal McBee Corporation to bargain
collectively with Local Union No. 453,
International Brotherhood of Electrical
Workers, as bargaining agent of a separate unit composed of three electrical
maintenance employees at the Springfield
plant of the corporation. The union had
been previously certified as the bargaining representative of the craft unit but
the company had refused to bargain with
it on the ground that the Board had improperly determined in the representation proceedings that the electrical maintenance employees were entitled to separate representation.

The representation proceedings were
instituted by the International Union,
United Automobile, Aircraft, Agricultural Implement Workers of America,
AFL-CIO (UAW), on November 24,
1959, in an effort to secure representation
of all of the employees in the Springfield
plant. Shortly thereafter the I.B.E.W.
petitioned to represent the electrical
maintenance workers as a separate unit
and the U.A.W. amended its petition to
exclude them, and the two proceedings
were consolidated. At this time the company was in the midst of transferring
its business of manufacturing portable
typewriters from its plant at Hartford,
Connecticut, to its new plant at Springfield, Missouri, and also in organizing its
plant at the latter place. The training

operations for the Springfield employees began in February and the new plant was partially occupied for assembly purposes in August 1959. Meanwhile the manufacture of parts continued at Hartford from which point they were sent to Springfield for assembly. When the hearing on the representation proceedings was held the work force consisted of 605 employees out of a total projected work force to be finally employed of 1360 employees. Evidence was introduced at the hearing in proof of these facts. It indicated that when the plant was fully organized the manufacturing operations would constitute a continuous operation in which the raw materials would be put through presses and machines and the manufactured parts routed by electrically driven belts through successive operations until upon final assembly of the parts the completed typewriter would be produced. In short, the manufacturing operation would comprise a single system which integrated all the production processes and, if uninterrupted, would turn out a finished machine, but if interrupted at any point the flow of parts would be stopped and the entire production line would be affected.

The Hearing Officer, however, reached the conclusion that the maintenance electricians comprised a distinct craft entitled to separate representation, and the Board affirmed his findings and ordered that in conjunction with the election to determine the choice of a representative for the employees generally there be held an election for the maintenance electricians in order to determine whether they wished to be included in the plant-wide unit or in a separate unit represented by the I.B.E.W. At the subsequent election a majority of the production and maintenance employees indicated that their choice was not to be represented by any labor organization while a majority of the three maintenance electricians cast their votes for the I.B.E.W., which thereupon was certified by the Board as their bargaining representative. On June 29, 1960 the

I.B.E.W. requested the company to bargain but it refused asserting that the Board's unit determination with respect to the representation of the maintenance electricians was improper.

Thereupon the I.B.E.W. filed a complaint against the company and a hearing was had before an Examiner. At this hearing the company made an extensive offer of proof, in addition to that adduced at the representation hearing, in order to show that in the interval between the two hearings the Springfield plant had become fully organized and that the manufacturing operations of the company were as fully integrated as those performed by steel mills in the production of steel. The Examiner rejected the offer on the ground that the completion of the Springfield plant had been brought to the attention of the Board on a motion of the company to reconsider the unit determination which the Board had overruled; and also because the basic facts in the offer of proof were essentially a restatement in greater detail of those offered and considered in the representation case. The Board affirmed the findings of the Examiner and ordered the company to cease and desist from refusing to bargain with the craft unit. Thereafter the company filed a motion to reconsider and set aside the Board's decision and order, wherein it called attention to the fact that the craft unit designated for bargaining purposes by the Board had been reduced in size to a single man in the interval between the issuance of the Examiner's intermediate report and the Board's decision and order, but this motion was denied.

In both the representation proceedings and the unfair labor practice proceedings the company invoked the decision of this court in N. L. R. B. v. Pittsburgh Plate Glass Co., 270 F.2d 167, certiorari denied, 361 U.S. 943, 80 S.Ct. 407, 4 L. Ed.2d 363. In that case we denied enforcement of an order of the Board requiring the employer to bargain with the representative of a craft unit of electricians who constituted a small minority of the employees in the integrated

plant of the company in Cumberland, Maryland. The order of the Board, as was shown in our opinion, was in line with the policy it set forth in American Potash and Chemical Co., 107 NLRB 1418, wherein it announced the rule that craft units would be split off from an established industrial unit when requested by a union that traditionally represents employees in the craft, irrespective of the degree of integration in the industry or the custom prevailing therein. Thereby the Board reversed the policy it had previously laid down in National Tube Co., 76 NLRB 1199, affecting the integrated steel industry, and in later cases affecting three other industries, where it was held that a separate unit of employees for bargaining purposes in an integrated plant would be detrimental to the basic wage structure underlying the operations and would have an adverse effect upon the productive capacity of the industry. The Board's policy with respect to the four favored industries, notwithstanding its decision in American Potash, was continued in effect. In view of this situation we held in Pittsburgh Plate Glass Co., that the action of the Board in denying to the plate glass industry the privilege accorded to other integrated industries was arbitrary and improper and, therefore, should not be enforced.[1]

The Board refused to recognize the authority of this decision in the proceedings in the case at bar. Noting that our opinion had been called to its attention, it said: "With all due respect to the opinion of the Court in that case the Board has determined to adhere to its policy, as expressed in American Potash and Chemical Corporation, 107 NLRB 1418, with respect to the severance of craft units." Accordingly, in both of its decisions the Board confined itself to demonstrating that the maintenance electricians comprise an identifiable group of craftsmen who possess and exercise the skills of their craft, and are, therefore, entitled to a bargaining representative as a separate group. There was, however, no finding in either decision that the company's Springfield plant is not integrated and no discussion of the possible harm to the operation of such a plant in setting up a separate bargaining group for a few employees upon whom the operation of the whole plant depends. Nor was there any attempt on the part of the Board to discuss the charge that, in excepting certain integrated industries from the American Potash rule and at the same time rigidly subjecting other integrated industries to the rule, it exceeds its powers under the statute. Under these circumstances we find no reason for receding from the position we took in the Pittsburgh Plate Glass Co. case. The petition of the company is, therefore, granted and enforcement of the order of the Board is denied.

---

[1]. The policies which the Board has pursued from time to time with respect to the creation of separate craft units for bargaining purposes were again reviewed in our opinion in N. L. R. B. v. Industrial Rayon Corporation, 4 Cir., 291 F.2d 809.