**METROPOLITAN LIFE INSURANCE COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 6154.

United States Court of Appeals
First Circuit.

Heard Nov. 7, 1963.

Decided Feb. 17, 1964.

Burton A. Zorn, New York City, with whom Jeremiah W. Mahoney, Boston, Mass., George G. Gallantz, Marvin Dicker, Thomas F. Delaney, New York City, Lyne, Woodworth & Evarts, Boston, Mass., and Proskauer, Rose, Goetz & Mendelsohn, New York City, were on brief, for petitioner.

Warren M. Davison, Atty., N. L. R. B., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gladys Kessler, Atty., N. L. R. B., Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

On petition of Insurance Workers' International Union, AFL-CIO, the National Labor Relations Board in a proceeding under § 9(c) of the Act, 29 U.S.C. § 159 (c), certified the Union as the bargaining representative of all debit insurance agents, including all canvassing regular and office account agents, at Metropolitan Life Insurance Company's district office in Woonsocket, Rhode Island. The Company deliberately refused to bargain collectively with the Union in order to challenge the appropriateness of the employee unit certified by the Board. See American Federation of Labor v. NLRB, 308 U.S. 401, 411, 60 S.Ct. 300, 84 L.Ed. 347 (1940); Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941). The Company agrees with the Board's classifications of employees included and excluded. That is to say, the Company does not contend that the unit certified by the Board contains ineligible employees or employees whose interests are antagonistic.

Its contention is that an employee unit consisting of the debit insurance agents working out of only its one Woonsocket district office is inappropriate. Its position is that the only appropriate unit would encompass either 1) all of its offices in the United States or 2) all of its offices in its New England Territory (Maine, New Hampshire, Vermont, Massachusetts and Rhode Island), or 3) all of its offices in Rhode Island. Furthermore, it says that in determining that the debit insurance agents at only one of its eight district offices in Rhode Island constituted an appropriate unit for collective bargaining, the Board treated as controlling the extent to which the Union had so far organized its employees in Rhode Island in clear violation of § 9(c) (5) added to the National Labor Relations Act by the Labor Management Relations Act, 1947, 61 Stat. 144 (1947), 29 U.S.C. § 159(c) (5), quoted in its pertinent context in the margin.[1]

The Board's policy for determining appropriate bargaining units of debit insurance agents has not been consistent over the years. In Metropolitan Life Ins. Co., 56 NLRB 1635 (1944), the Board announced that, departing from its previous policy, it would in the future, in the absence of unusual circumstances, avoid setting up units of debit insurance agents smaller than state-wide in scope. It said:

"Based upon the extent of organization among employees of an employer, we have frequently found appropriate for bargaining purposes small groups of employees with a provision for revision of a unit upon a later showing of broader organization. We believe, however, that the principle upon which we have set up such units is not controlling in the instant case. Organization among insurance agents is comparatively recent, but is steadily growing. The tendency of such organization is toward State-wide units. * * * Thus, the rapid growth of union organization among insurance agents makes it clearly appear that provisional units less than State-wide in scope are, under ordinary circumstances, unnecessary to make collective bargaining reasonably possible for them if they desire it. Accordingly, we are of the opinion that, in the absences of unusual circumstances the practice of setting up units for insurance agents smaller that [sic] State-wide in scope should be avoided. In the instant case, since the * * * [unions] are all actively engaged in a broad organizational program in Ohio, and since it may reasonably be anticipated that one of these organizations may in the near future extend its membership to State-wide proportions, we are of the opinion that it will not effectuate the policies of the Act to set up city-wide units for employees of the Company in Ohio at this time." Id. at 1639–1640.

In 1961 a majority of the Board in Quaker City Life Ins. Co., 134 NLRB 960, changed the policy the Board had established in the Metropolitan Life Ins. Co. case in 1944 by determining that the debit insurance agents of Quaker City's one district office in Alexandria, Virginia, constituted an appropriate bargaining unit. The majority in the Quaker City case quoted from the language quoted above from the Metropolitan Life case and said:

"Clearly this language of the Metropolitan Life case indicates that the rule was adopted *solely* in anticipation of broader organization on

1. Sec. 9.
"(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof:
* * * * * * *
"(c) (5) In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling."

908

a companywide or statewide basis, which at that time seemed imminent. As a practical matter, however, such statewide or companywide organization has not materialized, and the result of the rule has been to arrest the organizational development of insurance agents to an extent certainly never contemplated by the Act, or for that matter, by the Board that decided the Metropolitan Life case. There is no longer any rational basis for applying different rules of organization to the insurance industry than are applied to other industries. The rule was adopted for the purpose of permitting organization on a statewide or employerwide basis, which did not develop as anticipated. Contrary to our dissenting colleagues, we regard this as a valid reason for changing the rule. Obviously, when the purpose for which a rule has been established fails, the rule should also fail. This is especially so with respect to a rule which unfairly prejudices the collective-bargaining rights of employees. Accordingly, in the future, the Board's policy will be not to preclude the organization of insurance agents into units of less than employerwide or statewide scope, and we shall apply our normal unit principles to the cases as they arise. In the instant case, upon the record as a whole, and especially in view of the autonomous day-to-day operation of the district office here, the overall immediate supervision by the district manager, the lack of contact or interchange among employees of the various district offices, and the absence of any administrative subdivision between the home office and the district office, we find the district office unit to be appropriate." Quaker City Life Ins. Co., 134 NLRB 960, 962 (1961).

The two dissenting members of the Board said that they could see "no valid reason for departing from the Metropolitan Life rule which the Board adopted in 1944." Id.

The United States Court of Appeals for the Fourth Circuit, Judge Boreman dissenting, enforced an order of the Board requiring Quaker City Life Insurance Company to bargain collectively with the same union involved herein as the bargaining representative of the unit certified by the Board in its underlying representation proceeding. NLRB v. Quaker City Life Insurance Company, 319 F.2d 690 (C.A.4, 1963), enforcing 138 NLRB 61 (1962).

In subsequent cases a majority of the Board, with the same two members dissenting, certified as appropriate units consisting of nine of Metropolitan's district offices in the Cleveland, Ohio, metropolitan area (six offices in the City and three suburban offices eight or nine miles distant), Metropolitan Life Ins. Co., 138 NLRB 512 (1962), [unfair labor practice decision, 141 NLRB No. 96 (1963) ] on appeal to Sixth Circuit, Case No. 15366; two of Metropolitan's three district offices in Delaware, Metropolitan Life Ins. Co., 138 NLRB 565 (1962), [unfair labor practice decision, 141 NLRB No. 37 (1963) ] on appeal to Third Circuit, Case No. 14390, 328 F.2d 820. Metropolitan's single district office in Sioux City, Iowa, together with two detached offices under its administrative control in Fargo, North Dakota, and Sioux Falls, South Dakota, 284 and 120 miles distant, respectively, from Sioux City, Metropolitan Life Ins. Co., 138 NLRB 734 (1962); and all of Metropolitan's district offices within the political limits of the City of Chicago, thereby excluding suburban offices even though six of the thirty-three city district offices had territories extending beyond the city limits and three of the fourteen suburban offices had territories extending into the city. Metropolitan Life Ins. Co., 144 NLRB No. 15 (1963). In Equitable Life Ins. Co., 138 NLRB 529 (1962), the Board determined appropriate a unit consisting of two district offices in Cleveland, Ohio, with a detached office in Lorain, Ohio, 28 miles away.

And in this case the Board majority relying on prior decisions determined that one district office out of eight in a small densely populated state constituted an appropriate bargaining unit. The two dissenting members of the Board merely referred to their dissents in the Quaker City Life Ins. Co. case and in others in which they had not only reiterated that they saw no reason to depart from the policy established in the Metropolitan Life case of 1944, but had said that it appeared to them that the majority's unit determination was based upon the union's extent of organization of the debit agents involved.

We are very well aware that § 9(b) of the Act confers such broad discretion on the Board that a unit determination by it "if not final, is rarely to be disturbed." Packard Motor Car Co . v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947) ; International Typographical Union Local 38 v. NLRB, 278 F.2d 6, 10 (C.A.1, 1960), aff'd in part, rev'd in part, 365 U.S. 705, 81 S.Ct. 855, 6 L.Ed.2d 36 (1961). But we would be remiss in our duty as an enforcing court should we overlook or ignore an evasion by the Board of the command laid upon it by § 9(c) (5), supra.

We are seriously handicapped in this case by the Board's failure to articulate specific reasons for its unit determination. It merely said in a footnote to its decision and direction of election:

"The Employer has eight district offices and two detached offices in Rhode Island, and has only one district office in Woonsocket. The nearest district office is located 12 miles away in Pawtucket. In the `prior proceeding in Case No. 4–RC–4865, based on the same record incorporated by reference herein, we found

that each of Employer's individual offices was in effect a separate administrative entity through which the Employer conducted its business operations, and therefore was inherently appropriate for purposes of collective bargaining. See Metropolitan Life Insurance Company, 138 NLRB No. 73.[2] Applying the tests set forth therein, we find that, since there is no recent history of collective bargaining, no union seeking a larger unit, and the district office sought is located in a separate and distinct geographical area, the employees located at the Woonsocket district office constitute an appropriate unit. See also Metropolitan Life Insurance Company, 136 NLRB No. 87." [3]

Not only do the cases cited by the Board majority not directly support its decision, but also the criterion of location in a separate and distinct geographical area is not a criterion consistently applied by the Board as its decisions in Metropolitan's Cleveland and Chicago cases cited herein above clearly demonstrate.

In the Chicago case the Board majority said:

"While 6 of the employer's 33 offices in the city of Chicago have territories extending beyond the city limits, and 3 of the 14 suburban offices have territories extending into the city, we do not regard this factor as undermining the appropriateness of a unit confined to the city because the territorial boundaries of district offices may be subject to frequent change. Because of this, the Board has relied not upon territorial boundaries but upon the physical location of the individual offices as the yardstick in determining the geographic

2. This is Case No. 4–RC–4865 reported 138 NLRB 565 (1962) in which the Board majority determined that two of Metropolitan's three district offices in Delaware constituted an appropriate bargaining unit.

3. This is a mis-citation. No. 87 is reported 138 NLRB 734 and is the decision in which the Board majority determined that Metropolitan's single district office in Sioux City, Iowa, together with its two detached offices in Fargo, North Dakota, and Sioux Falls, South Dakota, constituted an appropriate bargaining unit.

appropriateness of the unit." Metropolitan Life Ins. Co., 144 NLRB No. 15 (1963).

At first blush there is a certain plausibility to this reasoning despite doubts that city boundaries provide a more satisfactory basis for determining a separate and distinct geographical area than do the business-prescribed areas delegated to each company office or the metropolitan area which has developed through natural growth.[4] Plausibility fades, however, upon consideration of Metropolitan's Cleveland case wherein the Board majority had previously decided that the Cleveland metropolitan area constituted an appropriate unit and certified a combination of six offices in the city and three in the suburbs, Metropolitan Life Ins. Co., 138 NLRB 512 (1962). Why there should be a community of interest among Metropolitan's agents working from both city and suburban offices in Cleveland but no community of interest among its agents working in both city and suburban offices in Chicago is not explained by the Board majority and is beyond our comprehension.[5]

The Board majority in this case did not discuss what weight, if any, it gave to the factor of extent of union organization. Nor indeed has the majority done so in any of its decisions since Quaker City.[6]

Looking at its actions, however, we have not found a single instance since Quaker City wherein the majority of the Board refused the debit insurance agent unit petitioned for by the Union. We would not consider this fact alone decisive for we would hesitate to assume that the Board was subservient to the Union. Yet we believe this fact is entitled to considerable weight in the light of the testimony of the Union's vice-president in Metropolitan's Cleveland case, supra, which was incorporated by stipulation in the record in the instant case, that if the Union did not succeed in organizing on a broader basis it would as a matter of policy petition for a unit "on a district basis." Indeed it is apparent that the Union followed this policy in the present case for in May and June 1962 it had engaged in organizational activities among agents attached to all of the Company's 8 district offices and 2 detached offices in Rhode Island, and it was only after lack of success in its state-wide attempt that it sought and received the Board's acceptance of the single district office in Woonsocket.

In short, the Union naturally wants units in which it can win elections and on the basis of the Board majority's actions, which speak more clearly than its words, it seems to us evident that in this case the Board majority in keeping with its apparent practice in recent years has given the Union the unit it wants. In the

4. As the dissenting members said: "If the appropriateness of insurance agents' units is to be determined by geographic considerations, we think it would be more reasonable to be guided by the metropolitan, or natural, confines of a geographic area, rather than the political limits of a city which are artificial and may be arbitrarily drawn. * * *" Id.

5. The Regional Director apparently had the same difficulty for he concluded that it would be improper to limit the unit to offices located within the city limits of Chicago because such a unit would include certain areas in the suburbs and exclude certain other areas in the city. Therefore he directed an election by the employees in all of Metropolitan's offices in the greater Chicago area. Metropolitan Life Ins. Co., 144 NLRB No. 15 (1963).

6. Judge Boreman in his dissent in that case at page 696 found more than a hint that extent of union organization was again dominant in the Board's thinking. He wrote: "Indeed * * * the Board, in stating the rationale of its determination to reverse the policy decision in Metropolitan, clearly indicates that its newly adopted policy is, in reality, based upon the extent of organization factor when it now says that the 'language of the Metropolitan Life case indicates that the rule was adopted *solely* in anticipation of broader organization on a company or state-wide basis, which at that time appeared imminent,' but that 'as a practical matter, however, such state or company-wide organization has not materialized.' "

absence of any statement by the Board majority of any other rational basis for its varying unit determinations, we can only conclude that the two member Board minority is correct in its charge that the majority has indeed reverted to its pre-1944 policy of regarding the extent of union organization as controlling in violation of § 9(c) (5) of the Act.

A decree will be entered setting the Board's order aside and denying the Board's cross-petition for enforcement.