S. D. WARREN CO., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 6452.

United States Court of Appeals First Circuit.

Nov. 8, 1965.

See also, 1 Cir., 342 F.2d 814.

John J. Delaney, Jr., Boston, Mass., with whom Murray S. Freeman, Gordon P. Ramsey, and Nutter, McClennen & Fish, Boston, Mass., were on the brief, for petitioner.

Leonard M. Wagman, Atty., Los Angeles, Cal., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison and Laurence S. Gold, Washington, D. C., Attys., were on the brief, for respondent.

Before ALDRICH, Chief Judge, MADDEN, Judge of the Court of Claims,* and JULIAN, District Judge.

MADDEN, Judge.

The petitioner, S. D. Warren Co., has filed this petition asking this court to review and set aside an order which the National Labor Relations Board has issued against it. The Board has filed a cross-petition asking the court to enforce, by its decree, the Board's order against the petitioner. The Board's jurisdiction to entertain the proceeding which resulted in its order and this court's jurisdiction in the instant proceeding are not in question.

A brief recital of the relevant events preceding the Board's order seems necessary. On November 27, 1962, four craft unions, each a member of the AFL–CIO federation, filed with the Board a representation petition asking to be certified by the Board as the joint collective bargaining representative of a unit of maintenance employees at the employer's Cumberland Mill in Westbrook, Maine. The Board proceeded to process the petition and held hearings on it in December,

* Sitting by designation.

1962, and January, 1963 at which hearings the unions and the petitioner were represented. In the course of the hearings the unions amended their petition somewhat in regard to the scope of the unit which they sought to represent. The employer took the position that the unit which the unions sought, in their petition as amended, to represent was not an appropriate unit.

The Board's Regional Director, who, under the Board's rules, had the authority to define the unit in a representation proceeding, specifically and in detail defined a unit and directed an election in which the employees in that unit should vote for or against representation by the petitioning unions. Our petitioner filed a request that the Board review the Regional Director's decision. The Board granted the request, reviewed the proceeding, and, by a divided vote of the three-member panel of the Board, affirmed the Regional Director's decision. The Board's full discussion of the problem, and its decision and direction of an election, are in 144 N.L.R.B. 204.

The election was held. The union won the election by a small majority. The petitioner filed a request for review, and initiated various post-election proceedings requesting the Regional Director and the Board to change their rulings. These efforts of the petitioner were unsuccessful and the unions were certified by the Board as the joint exclusive bargaining representative of the employees in the defined unit. 150 N.L.R.B. No. 32.

The unions, at last armed with the official certification as the collective bargaining representative, sought to bargain. The petitioner refused to bargain with them. The unions then filed with the Board a charge that the petitioner was violating section 8(a) (5) and (1) of the National Labor Relations Act. A complaint was issued by the Board against the petitioner and a hearing was held before a Trial Examiner of the Board. The parties waived the usual procedure of a Trial Examiner's decision and submitted the case to the Board upon a stipulated record, the Board to make findings of fact, conclusions of law, and an appropriate order.

The Board reaffirmed the conclusions which it had reached in the representation case, discussed above, about the appropriateness of the unit, and affirmed the Trial Examiner's rejection, in the unfair labor practice 8(a) (5) and (1) trial, of evidence which the petitioner had presented in the various stages of the representation proceeding, and of some evidence which was available to the employer at these earlier stages, though it had not been presented. The Board found that the petitioner had violated §§ 8(a) (5) and 8(a) (1) of the Act, and ordered it to cease and desist from these unfair labor practices, to bargain with the unions, and to post the usual appropriate notices. It is this final action of the Board that the petitioner seeks to have us enforce.

■■ The National Labor Relations Act does not provide for direct court review of the actions of the Board in determining the appropriate bargaining unit and certifying the exclusive bargaining agent. But that does not leave the Board's action in these regards final and unreviewable, at least as concerns the employer. It may, as the instant employer has done, refuse to bargain with the representative certified by the Board and, if the Board in an unfair labor practice proceeding orders it to bargain, it may have court review of the validity of the Board's order, including its certification of the collective bargaining representative. Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251. The petitioner was, then, entitled to have the Board, in the § 8(a) (5) and (1) complaint case, take into account, except as indicated in the following sentence, evidence tending to show inappropriateness of the bargaining unit, improper conduct of the election, or any other matter relating to the validity of the certification. But when, as in this case, there has been repeated

and persistent litigation by the employer, in the certification proceeding, of numerous grounds of objection, it would be impermissible for an employer to withhold in the representation proceeding an important objection and present it for the first time in the § 8(a) (5) and (1) proceeding, to undo what had been tediously worked out in the representation proceeding. Pittsburgh Plate Glass Co. v. N. L. R. B., supra, at page 162, 61 S.Ct. 908. The foregoing discussion is not to be taken as suggesting that any evidence was offered in the § 8(a) (5) and (1) hearing which was of significance and which had not been presented in the representation proceedings.

■ As to the evidence which had been presented in the representation hearing, it would have been improper to have it repeated in the unfair labor practice hearing. By the easiest application of the doctrine of judicial notice, that evidence was in the case. It was available as a basis for the petitioner to argue, as it did, that the Board's appropriate unit decision was wrong.

For the reasons stated above, we hold that the petitioner's assertion that the Board erroneously excluded seasonably offered material evidence is without merit.

■ The petitioner urges that the unions' pre-election representations require that the Board's order be set aside. About May 25, 1962, some sixteen months before the election was held, the unions distributed a leaflet to employees in the company's Engineering Division soliciting them to sign authorization cards, this being a necessary or useful step toward inducing the Board to hold an election. The leaflet said, *inter alia*,

> Many employees * * * have requested to be represented by their own craft Union, such as; carpenters by the Carpenter's Union, Machinists by the Machinists's Union, Electrician by the Electrical Union, Firemen by the Firemen's and Oiler's Union, etc.
>
> * * * * * *

> Although the enclosed card is in the name of the Machinists Union, it will get you an election and after the election each group will have the opportunity to go in his own Union.
>
> * * *

The four named craft unions were the four which in November, 1962, filed the joint petition to the Board asking for a joint certification. An intelligent reading of the leaflet would have informed the reader that he could support the agitation for an election without retiring from or refraining from joining his own craft union. When the election notices were issued and posted by the Board, more than a year later, they made it plain that the representation, if the vote was in favor of it, would be a joint representation by the four unions. The employees could not have been misled. The petitioner's contention is not valid.

The petitioner contends that the Board's order should be set aside because it is based upon an arbitrary and capricious unit determination.

■ Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b), says:

> The Board shall decide in each case whether, in order to secure to employees the fullest freedom in exercising the rights guaranteed by this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

The discretion lodged in the Board is a broad one. In view of the language of § 9(b) and of the act as a whole, and of the judicially known purpose of the act to promote collective bargaining, the act is not a mandate to the Board to use its discretion to so define units that unions cannot win elections in the units as defined. The Board's discretion is not, however, unlimited and unreviewable by the courts. If, then, the petitioner's contention in this case that the Board's unit determination was arbitrary and capricious is true, its order should not be allowed to stand.

Of the many tasks entrusted by the Labor Relations Act to the Board, the determination of the appropriate units may be the most difficult. The Board's answer to the unit question is often decisive as to whether or not there is to be collective bargaining, just as the definition of the boundaries of a political election district may determine which party will win such an election. In the early years of the Board, its task of determining the appropriate unit involved it deeply in the then bitter conflict between the craft-unions of the AFL and the industrial unions of the CIO.[1] Obviously, unit controversies do not present situations in which a reviewing court should light-heartedly and captiously second-guess the agency to which Congress entrusted the primary responsibility.

■■ In the instant case the Board had no petition indicating a desire for collective bargaining in the "employer unit" which would have comprised not only the employer's Cumberland Mill, but also its several other mills located elsewhere. Nor did the Board have a petition indicating a desire for collective bargaining in the "plant unit," which unit would have included all of the some 2800 employees in the Cumberland Mill itself. What the Board did have before it was a petition representing that the employees in the petitioner's Engineering Division desired an opportunity to vote on the question of whether there should be collective bargaining in that Division. As a unit, that would be a "subdivision thereof" of the plant unit and therefore authorized by the statute. The fact that it was authorized by the statute still left with the Board the responsibility of determining whether it was "appropriate" or not. We suppose that the test should be whether, in the circumstances, the proposed unit is rational or not, or, as stated by the employer in its brief, whether it was merely "arbitrary and capricious." If the sought unit represented a crude gerrymander, so delineated that the petitioning unions could win an election in it, it would be irrational for the purposes of the act. But the petitioner's Engineering Division was no gerrymander. It was already in existence, created by the petitioner itself as one of its ten separately supervised divisions. The Engineering Division's work is approximately one third maintenance work, one third new construction work, and one third utilities and related operations work.

In the proceeding which led to the decision of the Supreme Court of the United States in N. L. R. B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 85 S. Ct. 1061, 13 L.Ed.2d 951, this court denied enforcement of the Board's order requiring the employer to bargain with the certified union. 327 F.2d 906.

Section 9(c) (5) of the National Labor Relations Act, 29 U.S.C. § 159(c) (5), says:

In determining whether a unit is appropriate for the purposes specified in subsection (b) the extent to which the employees have organized shall not be controlling.

This court concluded that the Board had, in that case, determined appropriate a small unit of insurance agents, which unit could be distinguished from units previously determined in other cases involving the same employer and other insurance company employers only by the fact that the union had not yet organized the employees in a larger unit. This court so concluded because, in its opinion, the record in the case did not indicate any other or better reason, and the Board itself, in its unit decision, did not adequately justify its determination.

The Supreme Court reviewed this court's decision, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951, and held that this court was in error in concluding that the

1. See, e.g., In the Matter of American Can Co., 13 N.L.R.B. 1252 (1939), in which the writer of this opinion, then a member of the Labor Board, dissented from the decision of his colleagues.

record showed a violation by the Board of Section 9(c) (5). The Supreme Court recognized that the failure of the Board to articulate its reasons for its unit determination made it impossible for this court to enforce the Board's Section 8(a) (5) collective bargaining order, since enforcement would have required a determination by this court that the Board's unit determination was a rational determination. The Supreme Court said:

> When the Board so exercises the discretion given to it by Congress, it must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it." (Citing cases.)

The Supreme Court vacated the judgment of this court and remanded the case to it with instructions to remand the case to the Board for further proceedings consistent with the Supreme Court's opinion.

 We take it that the Supreme Court's decision in the Metropolitan Life Insurance Co. case teaches that the Board's discretion in unit determination is a broad discretion and that a reviewing Court of Appeals would rarely be justified in deciding that the Board's unit determination was wrong; that when the propriety of a unit determination is not made apparent by the Board's decision, remand for further proceedings by the Board, rather than denial of enforcement, is the right procedure.

The lessons of the Metropolitan Life Insurance Company case are not applicable to our case. The Board's unit determination was not on its face nor in its circumstances lacking in rationality. The Board, in its published decision in the representation proceeding, 144 N.L.R.B. 204, recited its reasons for its unit determination. Those reasons seem to us to be substantial. We assume, at this point, that a unit of less than the petitioner's entire plant would be rational. We discuss hereinafter the petitioner's argument to the contrary.

The petitioner claims that the Board's decision was arbitrary and capricious in that it gave no weight to the expressed agreement of the parties as to unit placement, and ignored the express desires of the employees. This contention relates to a group of 20 employees in a branch of the Engineering Division who did production work or some production work. The Trial Examiner found, and the Board agreed, that there had been no clear agreement of the parties that these 20 employees should be excluded from the unit. As to the petitioner's having agreed to any such detail about the unit, it has always taken and still takes the position that any unit smaller than all the employees in the plant is arbitrary and capricious. It could not, then, have agreed, other than conditionally, to any detail about a smaller unit. Further, the statute provides that the Board shall determine the unit and it is not for the parties to determine the unit by agreement.

 The petitioner contends that "the Board's unit determination fails to afford to the Company the uniform application of the Board's Rules of Decision required by the Act." Under this heading, the employer urges that in an integrated enterprise such as its Cumberland Mill, the only collective bargaining unit that would not be arbitrary and capricious would be a unit comprising all the employees in the plant. It says that the Board has so held with regard to four "favorite industries," namely, Basic Steel, (National Tube, 76 N.L.R.B. 1199); Wet-Milling, (Corn Products Refining Company, 87 N.L.R.B. 187); Lumber, (Weyerhaeuser Timber Co., 87 N.L.R.B. 1076); and Aluminum, (Permanente Metals Co., 89 N.L.R.B. 904), on the reasoning that such industries are highly integrated with basic operations mutually interdependent. It says that its Cumberland Mill is just as highly integrated, with its basic operations mutually interdependent, as are the four "favorite" industries, and that therefore it is entitled to the same treatment as those industries.

The doctrine which the Board has applied in what the petitioner calls the four favored industries is based by the Board upon the long history of plant-wide collective bargaining in those industries. In the case of N. L. R. B. v. Pittsburgh Plate Glass Co., 270 F.2d 167, 174 (CA 4), the court required the Board to apply the same doctrine to the plate glass industry which, the court said, was "as much if not more integrated than those in the favored group and has an unbroken history of plantwide bargaining." In that case, then, the court denied a craft union the right to break in upon such a plant-wide collective bargaining situation even though a majority of those in the craft desired to have their own separate representative.

We think that the decision of the Fourth Circuit in Pittsburgh Plate is no indication of what a court should decide in a case such as the instant one in which there is no evidence of a regular collective bargaining practice in the paper industry as a whole, and in which there is evidence that there has been no collective bargaining at all in the Cumberland Mill here under consideration. In such a situation we think it is not the responsibility of the employer or the Board to keep the field open for some hypothetical future plant-wide union by keeping out craft unions or department unions which, if they got in, might at some indefinite time in the future mar the symmetry of plant-wide bargaining. To the extent that the later Fourth Circuit decision in Royal McBee Corp. v. N. L. R. B., 302 F.2d 330, is to the contrary, we think the court went beyond the logic of its Pittsburgh Plate decision.

The petition of the S. D. Warren Company to adduce further testimony is denied. Its petition to set aside the order of the Board is denied.

The cross-petition of the National Labor Relations Board for enforcement of its order is granted in full.