ROHM & HAAS COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 10294.

United States Court of Appeals Fourth Circuit.

Argued April 8, 1966.

Decided June 2, 1966.

Patrick A. Gibson, Richmond, Va. (Francis V. Lowden, Jr., George H. Hettrick, Richmond, Va., Herman Lazarus, Lazarus & Levin, Philadelphia, Pa., and Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for petitioner.

Joseph C. Thackery, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., National Labor Relations Board, on brief), for respondent.

Before SOBELOFF, BRYAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Circuit Judge:

The issue presented in this proceeding is whether the unit approved by the National Labor Relations Board is an appropriate one for purposes of collective bargaining. Rohm & Haas Company petitions for review of the Board's order, issued October 14, 1965, determining that the company violated section 8(a) (5) of the National Labor Relations Act by refusing to bargain with the Seafarers

International Union [1] upon request. The company admits that the union is certified by the Board as bargaining representative of the powerhouse employees, but justifies its refusal on the grounds that the bargaining unit sanctioned by the Board is an inappropriate one.

The company's Bridesburg, Pennsylvania, plant employs 1100 production workers and 268 maintenance employees including 22 in the powerhouse, and is engaged in the manufacture of ammonia and sulfur products.[2] In 1947 the International Union of Operating Engineers, Local 541, was certified as the bargaining representative of the maintenance workers including the powerhouse employees.[3] However, during the negotiation of the first contract the powerhouse employees informed the union and the company that they did not wish to be represented by the Operating Engineers and, by consent of both the company and the union, the powerhouse employees were excluded from the overall maintenance unit. A clause expressly excluding the powerhouse employees from the broader unit was embodied in the first contract and has been perpetuated in each successive contract.

In 1959 the Operating Engineers petitioned for an election among the powerhouse workers. The United Glass & Ceramic Workers Union was allowed to intervene over the objection of the employer that it was not a traditional representative of powerhouse employees. The election was held but both unions were rejected.

Again, in 1964, when the Seafarers International Union (S.I.U.) filed a petition for an election among the powerhouse employees, the same unit was deemed appropriate by the Board. At the ensuing representation hearing the Operating Engineers Union, which repre-

sented the maintenance employees other than those in the powerhouse, did not indicate a desire to appear on the ballot nor did it submit an independent showing of interest among the employees in the unit requested by the S.I.U. Over an objection interposed by the employer the Regional Director determined that the powerhouse employees constitute an appropriate bargaining unit and ordered an election. The Board declined to review the Regional Director's determination, and the union won the election, 12 to 10.

In support of the determination that a unit consisting of powerhouse employees is appropriate for purposes of collective bargaining, the Regional Director's Decision and Direction of Election states that:

"The basic facts remain unchanged from those considered by the Board in 1959. The employee complement remains the same with the exception of the instrument mechanics who have been transferred from the power house and whom the Petitioner does not seek to represent. Power house employees work in a separate area under the separate supervision of a foreman and power engineer. Their duties include operating and maintaining boilers and the water supply system. With the exception of coal loaders, Company policy requires power house employees to obtain stationery [sic] operating engineer's licenses. It is clear that the power house employees remain, as found to be in 1959, a 'functionally distinct homogeneous departmental group of employees traditionally accorded separate representation * * * '" [Citations omitted].

Although an overall maintenance unit including powerhouse employees is an appropriate unit, the Board has often recognized units limited to powerhouse em-

---

1. United Industrial Workers of North America of the Seafarers International Union of North America, Atlantic, Lakes & Inland Waters District, AFL–CIO.

2. This court has jurisdiction of the case because the company "transacts business" in this circuit. 29 U.S.C.A. § 160(f).

3. The production employees have rejected union representation four times—in 1943, 1959, 1962, and 1963—and continue unrepresented.

ployees as also appropriate for purposes of collective bargaining. E. g., Kolker Chemical Corp., 130 N.L.R.B. 1394 (1961); Minnesota Mining & Manufacturing Co., 129 N.L.R.B. 789 (1960); New England Confectionery Co., 108 N.L.R.B. 728 (1954). See also NLRB v. Industrial Rayon Corp., 291 F.2d 809 (4th Cir. 1961).

The company, seeking to upset the unit determination, argues that this case is but another example of the Board's application or misapplication of its *American Potash* rule,[4] which this court has on three previous occasions characterized as arbitrary and discriminatory. NLRB v. Pittsburgh Plate Glass Co., 270 F.2d 167 (4th Cir. 1959), cert. denied, 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed.2d 363 (1960); NLRB v. Industrial Rayon Corp., 291 F.2d 809 (4th Cir. 1961); Royal McBee Corp. v. NLRB, 302 F.2d 330 (4th Cir. 1962). We adhere to the views expressed by Judge Soper in the above cases, but do not agree with the conclusion the employer would draw from them. As we view the record, this case is not controlled by the three earlier decisions.

*American Potash* declared that where a distinct craft or department was included for representation purposes in a larger unit, e. g., plant-wide, the Board would permit the craft or department to be severed from the existing bargaining unit and be represented by its own union, irrespective of prior bargaining history or the degree of plant integration, if the union seeking to represent the particular craft or department was a traditional representative of that craft or department. In the same case the Board nevertheless indicated that in severance cases it would continue to consider integration of operations and prior bargaining history in four favored industries, basic steel, wet milling, lumber, and aluminum.

The Board contends that apart from the propriety or impropriety of the *American Potash* decision, its doctrine has no bearing on the issue here presented. And this is precisely the position taken by the Regional Director in the case under review. He reasoned as follows:

> "Since these employees have not been represented for 15 years, there is no question of severance and it is unnecessary for Petitioner to satisfy the traditional union test. Plastic Film, 123 NLRB 1635, 1638. Nor is the fact that a Board certification once covered the Employer's power house employees binding since representation of the employees in the power house group has been specifically disclaimed. Crane Company, 81 NLRB 460."

A reading of *American Potash* and the three cases in this circuit disapproving the *American Potash* doctrine compels our agreement with the Regional Director's exposition and the Board's contention in the present case.

In *Pittsburgh Plate Glass* the Board, relying on its rule in *American Potash,* certified the International Brotherhood of Electrical Workers as the bargaining representative of the company's electricians at its new Cumberland, Maryland, flat glass plant. The Board issued the certification despite the highly integrated nature of the plate glass industry generally and of the Cumberland plant in particular, the prior history of company-wide bargaining for all Pittsburgh's flat glass plants across the country, and the extension to the new Cumberland plant of the previously executed company-wide agreement with the United Glass & Ceramic Workers Union. This court, in reversing the Board, condemned that agency's disregard of prior bargaining history and high degree of operational integration in the glass industry while at the same time the Board accorded great weight to those same factors in four other, favored industries. 270 F.2d 167.

The *Royal McBee* case presented a similar situation. There the Board certified the International Brotherhood of

---

4. American Potash & Chemical Corp., 107 N.L.R.B. 1418 (1954). Compare National Tube Co., 76 N.L.R.B. 1199 (1948).

Electrical Workers as bargaining agent for the company's three maintenance electricians, despite the fact that the company's plant was newly built and highly integrated and had only half-filled its employee complement. Moreover, the company effected a transfer of operations to the new plant from an old plant, where there had been a history of twenty years of plant-wide collective bargaining.[5] Of this court's opinion in *Pittsburgh Plate Glass* the Board in *Royal McBee* said: "With all due respect to the opinion of the Court in that case the Board has determined to adhere to its policy, as expressed in American Potash and Chemical Corporation, 107 NLRB 1418, with respect to the severance of craft units." Because the basis in part of the Board's decision in *Royal McBee* was the continued application of *American Potash*, this court refused to enforce the Board's order. 302 F.2d 330. Compare S. D. Warren Co. v. NLRB, 353 F.2d 494 (1st Cir. 1965), in which an employer's attempt to cast the unit issue in terms of *American Potash* was rejected where there was no reliance by the Board on that doctrine and no history of any prior bargaining.

In the instant case the Board, in both the 1959 and 1964 representation proceedings, has denied that the *American Potash* doctrine formed the basis for its decision that the powerhouse employees constitute an appropriate unit. There is no reason to suspect that its denial is an attempt to camouflage an unarticulated reliance on *American Potash*. It is plain that the Board has not ordered a severance of the powerhouse employees from a plant-wide unit or even an overall maintenance unit. The separateness of the powerhouse employees is the product not of a Board decision but of an agreement between the company itself and the Operating Engineers Union, initiated in 1947 and never departed from. Moreover, the Operating Engineers appeared at the 1964 representation hearing and disavowed any interest in representing the powerhouse employees. Where the company and a union themselves agree that a distinct group of employees with a community of interest should be excluded from a collective agreement, albeit at the request of the excluded employees, it seems particularly appropriate to allow them to choose another union to represent them. Contrary to the employer's suggestion, it is clear that the Board in fact considered past bargaining history in its unit determination, and that it was this weighty factor, combined with the functionally distinctive nature of the powerhouse group, that led the Board to its conclusion that the powerhouse employees constitute an appropriate unit.

The fact that the S.I.U. does not traditionally represent powerhouse employees in no way alters the result here reached. This is not a case where the Board is severing a small segment from a larger unit. Cf. NLRB v. Industrial Rayon Corp., 291 F.2d 809 (4th Cir. 1961). As heretofore noted, the company and the Operating Engineers Union, and not the Board, effected the so-called severance. In these circumstances the traditional union test of *American Potash* is irrelevant. The powerhouse employees, comprising a residual but otherwise appropriate unit, have the right to be represented by any labor organization of their choice. Cf. "The Board and Section 9(c) (5): Multilocation and Single-Location Bargaining Units in the Insurance and Retail Industries," 79 Harv.L.Rev. 811, 828 n. 122 (1966).

There is in fact no severance, and no violence is being done to any previously existing bargaining unit. We perceive no inconsistency or arbitrariness in the Board's action. The petition to set aside the Board order is denied, and the cross-petition of the Board for enforcement is granted.

Petition denied; order of Board enforced.

---

5. Brief for employer, pp. 5–6, 17–18, Brief for Board, p. 13 n. 11, Royal McBee Corp. v. NLRB, 302 F.2d 330 (4th Cir. 1962).