385 F.2d 301
 128 U.S.App.D.C. 41
 RETAIL, WHOLESALE, AND DEPARTMENT STORE UNION, AFL-CIO, and
International Ladies' Garment Workers Union,
AFL-CIO, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Saks & Company,
Intervenor.
SAKS & COMPANY, a corporation, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Retail,
Wholesale, and Department Store Union, AFL-CIO,
and International Ladies' Garment
Workers Union, AFL-CIO, Intervenors.
 Nos. 20440, 20498.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 6, 1967.
Decided Sept. 14, 1967.
 
 Mr. Jerry D. Anker, Washington, D.C., with whom Mr. David E. Feller, Washington, D.C., was on the brief, for petitioners in No. 20,440 and intervenors in No. 20,498.
 Mr. Eugene H. Gordon, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Michael G. Kushnick, Washington, D.C., was on the brief, for petitioner in No. 20,498 and intervenor in No. 20,440.
 Mr. John D. Burgoyne, Atty., N.L.R.B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Mrs. Nancy M. Sherman, Atty., N.L.R.B., were on the brief, for respondent.
 Before DANAHER, WRIGHT and ROBINSON, Circuit Judges.
 J. SKELLY WRIGHT, Circuit Judge.
 
 
 1
 These consolidated appeals are before the court on two petitions to review one decision and order of the National Labor Relations Board issued against Saks and Company, holding that Saks violated Sections 8(a)(1) and (5)[1] of the National Labor Relations Act in refusing to bargain with the unions certified by the Board as representing the non-selling employees at the Saks store in Chicago.[2] The issue presented in the company's petition is whether the bargaining unit created by the Board in the representation proceedings is an 'appropriate' one within the intendment of Section 9[3] of the Act. In their petition the unions ask for additional relief. They would have the Board order that any collective bargaining agreement ultimately negotiated by the parties be made retroactive to the date when the company first refused to bargain. We enforce the Board's order as issued.
 
 
 2
 * The record shows that both the unions and the company filed representation petitions which were consolidated for hearings. The hearings developed that Saks in Chicago is a traditional type retail department store having approximately 500 employees basically divided into selling, non-selling and clerical. The non-selling employees include stockmen, wrappers, drivers, engineers, maintenance men, and similar classifications. The clerical employees are of two kinds: 'Selling Department Clerical' who work in the selling areas maintaining various records principally relating to inventory, and central office or 'Control Division' clerical, which division is headed by the company's controller. Clerical jobs in that division are administrative and include jobs like auditing, billing, payroll, customer service, telephone operators and cashiers.
 
 
 3
 The lines of supervision of the three kinds of employees differ significantly. The selling employees are answerable to their department heads, the Control Division clerical are answerable to the controller, and the non-selling employees are supervised by different overseers depending on the particular job classification. All the store employees work the same hours, receive identical benefits, and are subject to the same company rules. Sometimes selling and non-selling employees work together in preparation for sales or in taking inventory. But there is little if any interchange of employees between selling and non-selling jobs. Selling employees do not punch time clocks; non-selling employees, including selling department clericals, do. Selling employees are required to dress according to set standards while non-selling employees, with the exception of those who come in contact with the public, have no specific dress regulations. The pre-assignment training of the two groups is different; in fact, most of the non-selling personnel receive no pre-assignment training at all from the company.
 
 
 4
 There is no history of collective bargaining for any of the employees involved in this case. During the organizational campaign the extent of the unions' organizational efforts changed. Initially the unions courted only the non-selling employees; then briefly they distributed leaflets appealing for affiliation of all of the company's employees; and finally, at the hearing, the unions sought to limit the bargaining unit to some 40 employees less than all of the non-selling personnel. Throughout the company contended that only a storewide unit of all employees would be appropriate.
 
 
 5
 Relying on three recent decisions of the Board,[4] the Regional Director rejected the company's contention and concluded that a unit limited to the non-selling employees was also appropriate under the Act. Since the unit requested by the unions did not embrace all of the nonselling personnel, the Regional Director added certain employee classifications amounting to 40 employees and directed an election.[5] The unions won the elections handily and were certified as the exclusive representatives of the company's employees in the unit. The company admittedly refused to bargain with the unions and the unions filed the unfair labor practice charges.
 
 
 6
 At the hearing on these charges the company sought to offer evidence relating to the construction, after the representation hearing, of a new building which increased the selling area approximately 50 per cent. Since the company's construction plans were available to the company prior to the representation hearing, the Trial Examiner found that none of the evidence offered was newly discovered. The Board held that the changes effected in the store after the representation hearing 'had no significant impact upon the validity of the initial determination as to the appropriate unit.' The Board further concluded that the company had violated Sections 8(a)(5) and (1) of the Act by its admitted refusal to bargain with the unions. It required the company to bargain with the unions and to post the usual notices. It rejected the request of the unions that it order that any contractual benefits negotiated by the parties be retroactive to the date of the unions' original bargaining demand.
 
 II
 
 7
 On appeal the company continues to pursue its argument made before the Board that only a storewide unit is appropriate under Section 9 of the Act. It asserts that Stern's, Paramus, Arnold Constable Corporation, and Lord & Taylor, Div. of Dry Goods Corp., 150 N.L.R.B. 799, 788, 812 (1965), in which the Board adopted a basically new approach to department store organization, have never been tested in the courts. In the Stern's trilogy, as these three cases are called, the Board held that under Section 9(b) 'in order to assure to employees the fullest freedom in exercising the rights guaranteed by this (Act),' a unit appropriate for collective bargaining with department stores may be a segment or subdivision, rather than all, of the store employees. Assuming these cases were properly decided, the company argues that they 'did not overrule the long line of Board decisions declaring a storewide unit to be the appropriate unit in the retail industry,'[6] that, in any event, the method of operation at Saks is significantly different from that in the department stores in the Stern's trilogy, and that because of these differences the principles announced in the trilogy should not be applied here.
 
 
 8
 The company also argues that, in applying the principles announced in the Stern's trilogy in this case, the Regional Director created a unit by arbitrarily grouping some, but not all, non-selling employees. In this connection it makes the point that in Arnold Constable the selling department clerical and the central office clerical employees were grouped in an appropriate unit, whereas here the central office clericals, but not the selling department clericals, have been excluded from the non-selling unit. The company also asserts that a few employees in the advertising and personnel departments and models have been excluded from the non-selling unit. In short, the company contends that the unit created by the Regional Director was based primarily on the unions' extent of organization, in violation of Section 9(c) (5)[7] of the Act.
 
 
 9
 The company also raises an evidentiary point. During the hearings it sought to show, through a central office clerical employee, the wishes of the employees of that department with respect to the formation of a bargaining unit. Relying on N.L.R.B. v. Ideal Laundry and Dry Cleaning Co., 10 Cir., 330 F.2d 712 (1964), it asserts that the refusal to hear this testimony was error.
 
 III
 
 10
 The labor policy of the United States is stated in Section 1[8] of the Act. It reads in part:
 
 
 11
 'It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining * * *.'
 
 
 12
 In implementing this policy the Congress provided, in Section 9(b), that 'the Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this (Act), the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof * * *.' 29 U.S.C. 159(b). Once the Board determines the unit appropriate to insure employees the fullest freedom in exercising the rights guaranteed by the Act, absent irrational and arbitrary action by the Board the matter 'is beyond our power of review.' Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 380, 66 S.Ct. 203, 90 L.Ed. 145 (1945). The issue as to what unit is appropriate for bargaining 'is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed. While we do not say that a determination of a unit of representation cannot be so unreasonable and arbitrary as to exceed the Board's power, we are clear that the decision in question does not do so. That settled, our power is at an end.' Packard Motor Car Co. v. N.L.R.B., supra, 330 U.S. at 491-492, 67 S.Ct. at 793. See also Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 152, 61 S.Ct. 908, 85 L.Ed. 1251 (1941).
 
 
 13
 Applying these principles to this case, we find that the Board, cognizant of the fact that previous decisions requiring storewide bargaining units in department stores have not resulted in union affiliation, in the Stern's trilogy determined on a new approach. In those cases it held that 'in order to assure to employees the fullest freedom in exercising the rights guaranteed by this (Act),' 29 U.S.C. 159(b), the unit appropriate for bargaining may be a subdivision of the total storewide personnel. At least certain subdivisions may be as appropriate as an all-employees unit. After investigation and hearing, the Board found that, on the facts there presented, under Section 9 of the Act appropriate separate units could be composed of the selling employees, the non-selling employees, and the clerical employees. The fact that these cases have not been tested in the courts indicates acceptance of them by the industry. Indeed, the Board points to many bargaining units voluntarily arrived at in the department store field in which selling, non-selling and clerical employees have been separated.
 
 
 14
 The facts as found by the Board in this case provide a rational basis for such separation. There is little employee interchange among the groups. The nonselling employees have a mutuality of interest in wages, hours and working conditions not necessarily shared by the selling or clerical employees. Certainly there are wide differences in the skills, duties and functions of the various groups. They are required to dress differently in some instances and, most important for this case, the non-selling employees apparently are more easily organized than those engaged in selling. All of these differences among the selling, non-selling and clerical employees do not necessarily require that they be in separate units. A storewide unit may well be appropriate, but this alone does not preclude the appropriateness of separate units.[9]
 
 
 15
 The company has pointed to the fact that the clerical employees engaged in inventory-taking are included in the bargaining unit in this case, whereas the general office clerical employees are not. It suggests there is no basis for this separation and cites Arnold Constable in support of its position. But the fact that the Board determined in Arnold Constable to recognize a bargaining unit composed of all clerical employees does not necessarily mean that in Saks' Chicago store the central office clericals should be included in the non-selling bargaining unit, particularly where they have shown no inclination in that direction. It should be remembered that the Stern's trilogy does not provide a format into which all department stores must be fitted. Section 9(b) states that 'the Board shall decide in each case' what the appropriate unit will be. And it need hardly be added that different facts, even in department store cases, may justify different units.
 
 
 16
 The company also cites the fact that a few advertising and personnel employees and models have been left out of the bargaining unit. The Board apparently concluded that personnel and advertising men and models are so foreign to truck drivers, stockmen, wrappers, doormen, and the like that they do not belong in the same unit. Again there is no indication that the advertising and personnel men and models desire to exercise collective bargaining rights.
 
 
 17
 The company's contention that the Board, in determining the appropriate unit, was controlled by the extent to which the employees have been organized in violation of Section 9(c)(5) of the Act will not bear examination. First, it should be made clear that the extent of union organization is a consideration in determining the appropriate unit. '* * * Both the language and legislative history of 9(c)(5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination.'[10] N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 441-442, 85 S.Ct. 1061, 1063, 13 L.Ed.2d 951 (1965). Here the Board obviously considered the extent of organization in determining the appropriate unit, but it was not controlled by that consideration. It did not accept the unit as proffered by the unions; it added 40 jobs to the unit so as to include most, if not all, of the non-selling employees other than the central office clericals.
 
 
 18
 The company relies heavily on N.L.R.B. v. Glen Raven Knitting Mills, 4 Cir., 235 F.2d 413 (1956), in which the court denied enforcement of the Board's order, holding that the unit created by the Board was controlled by the extent of union organization. The Fourth Circuit's own interpretation of that case restricts its application 'to those cases where the extent of union organization is 'found to have been the only factor relied on by the Board in deciding the appropriate unit." Overnite Transportation Company v. N.L.R.B., 327 F.2d 36, 40 (1963). So limited, Glen Raven presents no problem. It should be noted, moreover, that the Third Circuit has disagreed with Glen Raven in Metropolitan Life Insurance Company v. N.L.R.B., 328 F.2d 820, 826 (1964), reversed on other grounds, 380 U.S. 523, 85 S.Ct. 1325, 14 L.Ed.2d 265 (1965), and its decision was cited by the Supreme Court with apparent approval in N.L.R.B. v. Metropolitan Life Insurance Co., supra, 380 U.S. at 442, 85 S.Ct. 1061.
 
 
 19
 Saks has also asked us to find analogous the First Circuit's opinion in M.L.R.B. v. Purity Food Stores, Inc., 376 F.2d 497 (1967), but, with deference, we deem it not controlling here. The Board here has articulated the factors upon which its determination of an appropriate unit was based. Likewise, we distinguish the Seventh Circuit's opinion in N.L.R.B. v. Krieger-Ragsdale & Co., Inc., 379 F.2d 517 (1967), cited by the Board, as not determinative, although it is important for its emphasis that the Board's judgment and determination in these 'unit' cases will turn peculiarly upon the facts of the particular case.
 
 
 20
 The company's evidentiary point is without merit. Acceptance of testimonial evidence of employees' personal desires would be inconsistent with the statutory policy expressed in Section 9(c)(1), which forbids certifications not based on secret ballot elections. The possibility of undue pressure on employees, through fear of reprisals, to testify one way or the other is not to be discounted. Certainly giving weight to such employee testimony provides a precarious basis for fact-finding. Compare Radio Officers' Union v. N.L.R.B., 347 U.S. 17, 51, 74 S.Ct. 323, 98 L.Ed. 455 (1954); Joy Silk Mills v. N.L.R.B., 87 U.S.App.D.C. 360, 372, 185 F.2d 732, 744 (1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951). To the extent that N.L.R.B. v. Ideal Laundry and Dry Cleaning Co., 10 Cir., 330 F.2d 712, 717-718 (1964), relied on by the company, appears to indicate otherwise, we respectfully disagree.
 
 IV
 
 21
 In their petition for additional relief, the unions ask the Board to order that any collective bargaining agreement ultimately negotiated by the parties be made retroactive to the date when the company first refused to bargain. The unions argue that this relief is necessary, not only to make the employees whole, but also to discourage dilatory litigation. They rely on two recent studies to show that the tactic of delay not only tends to demoralize the employees but also dissipates their enthusiasm for collective bargaining. Ross, Analysis of Administrative Process Under Taft-Hartley, 63 LAB. REL. REP. 132, 136 (BNA 1966); Note, The Need for Creative Orders Under Section 10(c) of the National Labor Relations Act, 112 U.PA.L.REV. 69, 86-87 (1963).
 
 
 22
 The unions, quoting the Board, assert: 'It is axiomatic that remedial action, if it is to afford an effective redress for the commission of a statutory wrong, must be tailored to restore the wronged to the position he would have occupied but for the action of the wrongdoer.' Town & Country Mfg. Co., 136 N.L.R.B. 1022, 1029 (1962), enforced, 5 Cir., 316 F.2d 846 (1963). They tax the Board with failure to create remedies which will provide this measure of relief, particularly where the damage to the employees from the unfair labor practice is exacerbated by the delays inherent in the administrative process.
 
 
 23
 It is true that Section 10(c)[11] of the Act requires the Board 'to take such affirmative action * * * as will effectuate the policies of (the Act) * * *.' Section 10(c) 'charges the Board with the task of devising (effective) remedies * * *.' N.L.R.B. v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1953). It is also true that union attempts at organization are not always assisted by a mere finding of an unfair labor practice, an order to cease and desist, and a posting of the order. As the Board chairman has indicated, remedies should be created 'that will give more protection to the rights of self-organization, discourage unfair labor practices by unions and employers, and encourage the practice and procedure of collective bargaining.' McCulloch, A Tale of Two Cities: or Law in Action, 1962 PROCEEDINGS OF THE A.B.A. SECTION OF LABOR RELATIONS LAW 14, 25. In the recent past the Board itself has realized that its remedies are often less than effective and has been experimenting with new approaches in order more effectively to carry out the purposes of the Act.[12]
 
 
 24
 The present case, however, does not serve as an appropriate vehicle for creation of unprecedented remedies. There was only one violation of the Act alleged and found. And that violation, the failure to bargain, was not born out of any general hostility on the company's part to the unions or to the policies of the Act. The company refused to bargain only to obtain judicial review of the Board's conclusions in the representation case. It was its only means of obtaining such review. See Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); Pittsburgh Plate Glass Co. v. N.L.R.B., supra, 313 U.S. at 154, 61 S.Ct. 908, 85 L.Ed. 1251; Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 271, 349 F.2d 704, 706 (1965).
 
 
 25
 Nor is there any evidence that the company sought this review solely for the purpose of merely delaying the evil day when it would be required to bargain collectively. This was a serious appeal. As we have indicated, the Board has been in the process of changing its approach toward recognition of the appropriate bargaining unit in retail department stores under Section 9 of the Act. During this period of change it is entirely appropriate that the company test the Board's action in the courts.
 
 
 26
 Enforced.
 
 
 
 [1]
 29 U.S.C. 158(a)(1) and (5) (1965)
 
 
 [2]
 Saks & Company, 160 N.L.R.B. No. 59 (Aug. 30, 1966)
 
 
 [3]
 29 U.S.C. 159 (1965)
 
 
 [4]
 Stern's, Paramus, Arnold Constable Corporation, and Lord & Taylor, Div. of Dry Goods Corp., 150 N.L.R.B. 799, 788, 812 (1965)
 
 
 [5]
 The bargaining unit recognized by the Regional Director and approved by the Board was described as follows:
 'All nonselling employees of the (company's) Michigan Avenue, Chicago, Illinois, retail store and St. Clair Building Annex including stockwomen, stockmen, selling department clericals, floor cashiers, wrappers and inspectors, elevator operators, doormen, drivers, display employees, general maintenance employees, store engineer and assistants, fitters in the alteration departments, alteration clerks, section managers, and employees in the supply, marking room, millinery workroom, corset alteration, receiving, shipping and delivery, and returned goods departments but excluding all selling employees, office clerical employees, employees represented by other labor organizations, guards, managerial employees, confidential employees, and all supervisors as defined in the Act * * *.'
 
 
 [6]
 Citing John Breuner Co., 129 N.L.R.B. 394, 397 (1960); Polk Brothers, Inc., 128 N.L.R.B. 330, 331 (1960); I. Magnin & Company, 119 N.L.R.B. 642, 643 (1957)
 
 
 [7]
 Section 9(c)(5), 29 U.S.C. 159(c)(5), reads:
 'In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling.'
 
 
 [8]
 29 U.S.C. 151 (1965)
 
 
 [9]
 See S. D. Warren Co. v. N.L.R.B., 1 Cir., 353 F.2d 494, 498-499 (1965); Marshall Field & Co. v. N.L.R.B., 7 Cir., 135 F.2d 391, 394 (1943); Bonwit Teller, Inc., 159 N.L.R.B. No. 62 (June 24, 1966)
 
 
 [10]
 See H.R.Rep. No. 245, 80th Cong., 1st Sess., 37-38 (1947); H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess., 48 (1947). Senator Taft, in explaining the reason for 9(c)(5), stated:
 '* * * Opponents of the bill have stated that it prevents the establishment of small operational units and effectively prevents organization of public utilities insurance companies and other businesses whose operations are widespread. It is sufficient answer to say that the Board has evolved numerous tests to determine appropriate units, such as community of interest of employees involved, extent of common supervision, interchange of employees, geographical considerations, etc., any one of which may justify the finding of a small unit. * * *'
 
 
 [93]
 CONG.REC. 6860 (1947)
 
 
 [11]
 29 U.S.C. 160(c) (1965)
 
 
 [12]
 See J. P. Stevens and Co., Inc., 157 N.L.R.B. 869 (1966), enforced as modified, 2 Cir., 380 F.2d 292 (1967); H. W. Elson Bottling Company, 155 N.L.R.B. 714 (1965); Isis Plumbing & Heating Co., 138 N.L.R.B. 716 (1962), reversed on other grounds, 9 Cir., 322 F.2d 913 (1963); A.P.W. Products Co., Inc., 137 N.L.R.B. 25 (1962), enforced, 2 Cir., 316 F.2d 899 (1963)