NATIONAL  LABOR  RELATIONS  BOARD  *v.*
METROPOLITAN LIFE INSURANCE CO.

No. 98.  Argued January 21, 1965.—Decided April 5, 1965.

*Daniel M. Friedman* argued the cause for petitioner. On the briefs were *Solicitor General Cox, Arnold Ordman, Dominick L. Manoli, Norton J. Come* and *Warren M. Davison.*

*Burton A. Zorn* argued the cause for respondent. With him on the brief were *George G. Gallantz, Thomas F. Delaney* and *Marvin Dicker.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

On petition of Insurance Workers International Union, AFL–CIO, and over the protest of respondent, Metropolitan Life Insurance Company, as to the appropriateness of the bargaining unit, the National Labor Relations Board, in a proceeding under § 9 (c) of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U. S. C. § 159 (c) (1958 ed.), certified the union as the bargaining representative of all debit insurance agents, including all canvassing regular and office account agents, at respondent's district office in Woonsocket, Rhode Island.[1] Respondent deliberately refused to bargain with the union in order to challenge the appropriateness of the employee unit certified by the Board. See *Pittsburgh Glass Co.* v. *Labor Board,* 313 U. S. 146. The union thereupon filed unfair labor practice charges with the Board. The Board, adhering to its prior unit determination, held that respondent violated §§ 8 (a)(1) and (5) of the Labor Relations Act, 49 Stat. 452, as amended, 29 U. S. C. §§ 158 (a)(1) and (5) (1958 ed.), and directed respondent to bargain with the union. 142 N. L. R. B. 491. The Court of Appeals for the First Circuit refused to enforce the order on

---

[1] The Decision and Direction of Election issued by the Board on October 24, 1962, is unreported.

the grounds that in light of the "Board's failure to articulate specific reasons for its unit determination," 327 F. 2d 906, 909, the Board's apparently inconsistent determinations of appropriate units of respondent's employees in other cities or regions, see 138 N. L. R. B. 565 (Delaware); 138 N. L. R. B. 734 (Sioux City); 144 N. L. R. B. 149 (Chicago); 138 N. L. R. B. 512 (Cleveland),[2] its failure to discuss in these cases what weight, if any, it gave to the factor of the extent of union organization, and the fact that in these cases the Board consistently certified the unit requested by the union, the Court of Appeals could "only conclude that the . . . Board . . . has indeed . . . [regarded] the extent of union organization as controlling in violation of § 9 (c)(5) of the Act." 327 F. 2d, at 911. We granted certiorari because

---

[2] In the Delaware case the Board certified as a unit two of respondent's three district offices in the State; in the Sioux City case the unit certified was respondent's single district office in Sioux City, Iowa, together with two detached offices under its administrative control in Fargo, North Dakota, and Sioux Falls, South Dakota, 284 and 120 miles distant, respectively, from Sioux City; in the Chicago case the unit certified was that of all of the district offices within the city limits of Chicago, although some of the city offices had territories extending into the suburbs and some of the suburban offices' territories extended into the city; in the Cleveland case the certified unit consisted of respondent's six offices in the city as well as three offices in the suburbs; finally, in the instant case the unit certified was respondent's single district office in Woonsocket, Rhode Island, out of the eight offices in the State and the 75 offices in respondent's "New England Territory." In addition to the instant case and the Sioux City case, the Board has certified single district offices in *Western & Southern Life Ins. Co.*, 138 N. L. R. B. 538; *Metropolitan Life Ins. Co.* (Meriden and New London), 147 N. L. R. B. 69; *Metropolitan Life Ins. Co.* (Holyoke), 147 N. L. R. B. 688; *Metropolitan Life Ins. Co.* (Chicago Heights), 148 N. L. R. B. No. 145. See also *Metropolitan Life Ins. Co.* (Detroit), 146 N. L. R. B. 1577; *Metropolitan Life Ins. Co.* (Toledo), 146 N. L. R. B. 967; *Equitable Life Ins. Co.*, 138 N. L. R. B. 529.

of an apparent conflict between this decision and the decisions of the Court of Appeals for the Third Circuit in *Metropolitan Life Ins. Co.* v. *Labor Board,* 328 F. 2d 820, petition for certiorari pending, No. 56 this Term, which sustained the Board's determination in the Delaware case, 138 N. L. R. B. 565, and the Court of Appeals for the Sixth Circuit, *Metropolitan Life Ins. Co.* v. *Labor Board,* 330 F. 2d 62, petition for certiorari pending, No. 229 this Term, which sustained the Board's determination in the Cleveland case, 138 N. L. R. B. 512. See also *Labor Board* v. *Western & Southern Life Ins. Co.,* 328 F. 2d 891 (C. A. 3d Cir.), petition for certiorari pending, No. 91 this Term.

Section 9 (b) of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U. S. C. § 159 (b) (1958 ed.) provides:

> "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . ."

This broad delegation of authority, see *Pittsburgh Glass Co.* v. *Labor Board, supra,* was limited in 1947 by the enactment of § 9 (c)(5) of the Act, 61 Stat. 144, 29 U. S. C. § 159 (c)(5) (1958 ed.), which provides that "[i]n determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling."

Although it is clear that in passing this amendment Congress intended to overrule Board decisions where the unit determined could only be supported on the basis of the extent of organization, both the language and legisla-

442

tive history³ of § 9 (c)(5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its unit determination.⁴

The Court of Appeals here properly recognized this effect of § 9 (c)(5), but held, in light of the unarticulated bases of decision, and what appeared to it to be inconsistent determinations approving units requested by the union, that the only conclusion that it could reach was that the Board has made the extent of organization the controlling factor, in violation of the congressional mandate. We agree with the Court of Appeals that the enforcing court should not overlook or ignore an evasion of the § 9 (c)(5) command. We further agree that in determining whether or not there has been such an evasion, the results in other recent decisions of the Board are relevant. We cannot, however, agree that the only possible conclusion here is that the Board has violated § 9 (c)(5). Cf. *Metropolitan Life Ins. Co.* v. *Labor Board* (Cleveland), *supra; Metropolitan Life Ins. Co.* v. *Labor Board* (Delaware), *supra.*

On the other hand, due to the Board's lack of articulated reasons for the decisions in and distinctions among these cases,⁵ the Board's action here cannot be properly

³ See H. R. Rep. No. 245, 80th Cong., 1st Sess., 37–38; H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess., 48;. 93 Cong. Rec. 6444, 6860.

⁴ See National Labor Relations Board, Twenty-Eighth Annual Report 51 (1963), which properly states this statutory test: "Although extent of organization may be a factor evaluated, under section 9 (c)(5) it cannot be given controlling weight."

⁵ The Board's entire basis of decision on this issue in this case was set forth in the following footnote in its unit determination decision:

"The Employer has eight district offices and two detached offices in Rhode Island, and has only one district office in Woonsocket. The nearest district office is located 12 miles away in Pawtucket. In the prior proceeding in Case No. 4–RC–4865, based on the same record incorporated by reference herein, we found that each of Em-

reviewed. When the Board so exercises the discretion given to it by Congress, it must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it." [6] *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 197. See *Burlington Truck Lines* v. *United States,* 371 U. S. 156, 167–169; *Interstate Commerce Comm'n* v. *J–T Transport Co.,* 368 U. S. 81, 93. Although Board counsel in his brief and argument before this Court has rationalized the different unit determinations in the variant fac-

---

ployer's individual district offices was in effect a separate administrative entity through which the Employer conducted its business operations, and therefore was inherently appropriate for purposes of collective bargaining. See *Metropolitan Life Insurance Company,* 138 NLRB . . . [565]. Applying the tests set forth therein, we find that, since there is no recent history of collective bargaining, no union seeking a larger unit, and the district office sought is located in a separate and distinct geographical area, the employees located at the Woonsocket district office constitute an appropriate unit. See also *Metropolitan Life Insurance Company,* . . . [138] NLRB . . . [734]."

The cases cited are the Board's decisions in the Delaware and Sioux City cases discussed *supra.* They do not appear, because of their variant factual circumstances, to be direct authority for decision in this case. Moreover, the Board made no attempt to distinguish other cases, particularly the Chicago and Cleveland cases discussed *supra,* in which it certified different types of units. The unfair labor practice proceeding added nothing to the analysis, as the trial examiner did not review the issue, as he felt "bound by the Board's ruling in the representation proceeding," 142 N. L. R. B., at 492, and the Board affirmed the trial examiner's ruling without discussion, *id.,* at 491.

[6] Of course, the Board may articulate the basis of its order by reference to other decisions or its general policies laid down in its rules and its annual reports, reflecting its "cumulative experience," *Labor Board* v. *Seven-Up Co.,* 344 U. S. 344, 349, so long as the basis of the Board's action, in whatever manner the Board chooses to formulate it, meets the criteria for judicial review. Cf. *Swayne & Hoyt, Ltd.* v. *United States,* 300 U. S. 297, 299, 304; *Radio & TV Local 1264* v. *Broadcast Serv., ante,* p. 255.

tual situations of these cases on criteria other than a controlling effect being given to the extent of organization, the integrity of the administrative process requires that "courts may not accept appellate counsel's *post hoc* rationalizations for agency action . . . ." *Burlington Truck Lines* v. *United States, supra,* at 168; see *Securities & Exchange Comm'n* v. *Chenery Corp.,* 332 U. S. 194, 196. For reviewing courts to substitute counsel's rationale or their discretion for that of the Board is incompatible with the orderly function of the process of judicial review. Such action would not vindicate, but would deprecate the administrative process for it would "propel the court into the domain which Congress has set aside exclusively for the administrative agency." *Securities & Exchange Comm'n* v. *Chenery Corp., supra,* at 196.

Accordingly, the judgment of the Court of Appeals is vacated and the case remanded to that court with instructions to remand it to the Board for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting.

A reading of the Court's opinion reveals the fallacies on which the Board proceeded. The employer sought review of the Board's order, asking that it be set aside. Concededly it should be. But we need not act as *amicus* for the Board, telling it what to do. The Board is powerful and resourceful and can start over again should it wish. How stale this record may be we do not know. Neither of the parties asks for a remand. They are willing to stand or fall on the present record; and we should resolve the controversy in that posture.