**PUBLIC SERVICE COMMISSION OF the STATE OF NEW YORK, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Chandeleur Pipe Line Company, Intervenor.**

**No. 23446.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1970.

Decided June 29, 1970.

Mr. Morton L. Simons, Washington, D. C., with whom Mr. Kent H. Brown, Albany, N. Y., was on the brief, for petitioner.

Mr. Israel Convisser, Attorney, Federal Power Commission, with whom Messrs. Peter H. Schiff, Solicitor, and Robert L. Russell, Assistant General Counsel, Federal Power Commission, were on the brief, for respondent.

Mr. Justin R. Wolf, Washington, D. C., with whom Mr. David B. Ward, Washington, D. C., was on the brief, for intervenor.

Mrs. Barbara M. Suchow, Brooklyn, N. Y., filed a brief on behalf of the Brooklyn Union Gas Company, as amicus curiae.

Messrs. William I. Harkaway, Washington, D. C., and Bertram D. Moll, Mineola, N. Y., filed a brief on behalf of Consolidated Edison Company of New York, Inc., as amicus curiae.

Before TAMM, ROBB, and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

The case comes before us on the petition of the Public Service Commission of the State of New York to review a proceeding under Section 7 of the Natural Gas Act,[1] in which the Federal Power Commission issued a certificate of public convenience and necessity to the Chandeleur Pipe Line Company to transport natural gas from off-shore Louisiana federal leases to Pascagoula, Mississippi, where it will be consumed in a petroleum refinery owned by Standard Oil Company of California, of which Chandeleur (intervenor here) is a wholly owned subsidiary.

The basic argument of petitioner is that the Commission erred in refusing to consider the allegedly inferior end use to which the natural gas would be put, and that the Commission further erred in concluding that the public would benefit by permitting gas producers to utilize their own production, because of the incentive for exploration and development which supposedly would be provided.

Assisted by the briefs and the very able arguments of counsel of all parties, we are able to spell out the rationale of the Commission's decision as follows:

1. The Commission, at least in this proceeding, never accepted the claim advanced by New York that use by interstate residential and commercial consumers is a use superior to the industrial use contemplated in Standard of California's Pascagoula refinery. Since no comparative values of alternative end uses were established in the record of this case, there was neither a basis on which the Commission could weigh the comparative values, nor reason for it to do so.

2. The decisive consideration for the Commission is that Standard and its subsidiaries own and will produce the gas, will transport it, and will utilize it in a Standard refinery. This is said to be in the best public interest, because thereby is provided an incentive for this large oil company and other oil and gas producers to undertake exploration and development activities calculated to lead to an increase of the total national petroleum and natural gas reserves.

3. Even if interstate residential and commercial use were established as an end use superior to the local industrial use proposed by Standard, a conclusion urged by New York State but not established in this record, the factor of an alternative superior end use would not be sufficient to outweigh in the Commission's judgment the public good created by the incentive to exploration and development generated by permitting oil and gas developers to utilize their own reserves in their own refineries and industrial plants.

4. Even if the certificate were denied, as urged by New York State, there is no showing whatever that either interstate residential and industrial consumers in New York or any other interstate area would benefit by such denial of the certificate. The logical result to expect is that the proposed 16 inch pipeline would not be built, the off-shore reserves of gas here involved would continue to be transported over the existing 12 inch pipeline to the Pascagoula refinery, for which Chandeleur is already duly authorized. The Pascagoula refinery was presumably built on the assumption that a total finite quantity of gas reserves would be assuredly available. If the off-shore gas reserves here involved are diverted elsewhere, as New York State urges, there is no assurance that the Pascagoula refinery will be able to obtain substitute fuels at an equivalent cost, and therefore no assurance that the refinery will return its original investment cost and expected percentage of earnings. Standard can be assumed to continue the business enterprise as originally planned.

We say this is the rationale of the Commission's decision as we have deduced it. The trouble is that the Commission has not articulated all of this,

1. 15 U.S.C.A. § 717 et seq. (1963).

and substantial portions of the reasoning above are not supported by anything in the record.[2]

Specifically, the first point is derived from the Commission's Order denying a rehearing, where it appears somewhat as an afterthought, and where it is followed by a reference to the non-existence of prior statements of the Commission finding residential use to be a *superior* end use. This may be, but the Supreme Court has referred to "The Commission's long-standing conclusion that the use of gas under industrial boilers is an *inferior* use * * *." (Emphasis supplied.)[3] We are dealing with comparative values of alternative end uses here, and when the Commission has found one use inferior, but declines to find another superior when the two uses are comparative alternatives, it would be helpful to have an exposition of the Commission's position.

In regard to the second point, the Commission makes clear this is the principal basis of its decision, but the purported reason for this, i. e., the encouragement to exploration and development is not evaluated. Presumably a great incentive for exploration and development would be created if the price of natural gas were high enough, no matter what was the end use. The degree of extra incentive supplied to an oil and gas company when, as here, it is allowed to use its own gas in its own refinery was not analyzed, and hence the principal support for the Commission's decision is left in an unconvincing posture.[4]

As for the third point, it may well be that the over-all public good would be better served by extra incentives for exploration and development, rather than dedicating finite natural gas reserves to interstate residential and commercial use, as urged by New York State, but the Commission has not demonstrated that this is so. The Commission has simply said that for the reason of allowing companies to utilize their own natural gas, "we do not find it appropriate to consider the question of end use in these proceedings." A concurring opinion of the Commission Chairman evidences a concern with the problem of comparative end uses and reminds the Commission that at some point in time it must face up to the problem. It would appear that the interested parties, and this review tribunal, are entitled to a more detailed weighing of these factors than the Commission has given.[5]

As to the fourth point, the practical consequences of taking the action urged by New York State, while the Commission did say "it is likely that the gas from these reserves will continue to be transported to the Pascagoula refinery", the Commission articulated no reasons for this likelihood. The reason we have articulated is our own and purely speculative.

■ The above rewrite of the Commission's opinion, and critique of the same, demonstrates why it is necessary to remand this proceeding to the Federal Power Commission for a reconsideration and articulation of its views.[6]

■ This court as the appellate tribunal is entitled to rely upon the expertise of the Federal Power Commission, and indeed is required to give proper

2. As we said most recently in National Air Carrier Association et al. v. Civil Aeronautics Board et al., 141 U.S.App.D.C. ——, at ——, 436 F.2d 185, at 195 (1970) "[W]e begin with the observation that '[o]n review nothing is clearer than the principle that we examine the Board's reasons and not the subsequent rationalizations of its counsel.' Trailways of New England, Inc. v. CAB, 412 F.2d 926, 931 (1st Cir. 1969)"

W.A.I.T. Radio v. FCC, 135 U.S.App. D.C. 317, 320, 418 F.2d 1153, 1156 (1969).

3. FPC v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 8 at n. 5, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961).

4. Atlantic Rfg. Co. v. Public Service Commission, 360 U.S. 378, 391–392, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1958).

5. Radio Station KFH Co. v. FCC, 101 U.S.App.D.C. 164, 166, 247 F.2d 570, 572 (1957).

6. National Air Carrier Association et al. v. CAB et al., supra, at 141 U.S.App.D.C. pp. —— - ——, 436 F.2d pp. 195–199. W.A.I.T. Radio v. FCC, supra.

weight to such expertise, but it is not entitled to rely blindly on such purported expertise.[7]

In this particular proceeding the parties adversely affected by the Commission's decision, and seeking to attack it, have been forced to base their attack on the failure of the Commission to consider certain important factors and the failure to specify the rationale back of the Commission's decision. Surely the parties involved are entitled to a more explicit exposition of the rationale behind the Commission's decision than appears in the two opinions filed. The Commission's decision and the rationale supporting it may be entirely valid, but the Commission cannot take refuge in its alleged expertise in this field, when it does not set forth convincing reasons for its determination in sufficient detail to allow the validity of those reasons to be critically examined by the parties adversely affected and to allow this Court to pass on the reasonableness of the Commission's conclusions.[8]

Once this is done, the action of the Commission can then, if necessary, be properly reviewed. In its present posture we therefore remand this proceeding to the Federal Power Commission for reconsideration in light of our comments above.

---

7. Permian Basin Area Rate Cases, 390 U.S. 747, 792, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1967); Pikes Peak Broadcasting Co. v. FCC, 137 U.S.App.D.C. 234, 245, 422 F.2d 671, 682 (1969).

8. NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 442–443, 85 S.Ct. 1061, 13 L. Ed.2d 951 (1965).