**ALLEGHANY CORPORATION d/b/a Jones Motor et al., Petitioners,**

v.

**UNITED STATES of America, and Interstate Commerce Commission, Respondents,**

**Robert E. Mack, II et al., Intervenor-Respondents.**

**No. 76–1493.**

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1977.

Decided April 27, 1977.

Ira G. Megdal, Hyland, Davis & Reberkenny, Cherry Hill, N. J., for petitioners.

Mark L. Evans, and Robert Lewis Thompson, I.C.C., Donald I. Baker, and Lee I. Weintraub, Dept. of Justice, Washington, D.C., for respondents.

Daniel B. Johnson, Clyde E. Herring, Washington, D.C., for intervenor-respondents.

Before GIBBONS and ROSENN, Circuit Judges, and HANNUM, District Judge.*

OPINION OF THE COURT

HANNUM, District Judge.

Presently before the Court is an appeal from an order of the Interstate Commerce Commission (Commission) which authorized Mack Transportation Company of Philadelphia (Mack) to convert from contract carri-

---

* Honorable John B. Hannum, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

er to common carrier status pursuant to section 207 of the Interstate Commerce Act (Act), 49 U.S.C. § 307.

Mack, a family-controlled partnership, has operated as a motor carrier since 1919. It first came under regulation after the passage of the Motor Carrier Act of 1935, 49 U.S.C. §§ 301 et seq., and was granted authority to serve as an "open-ended" contract carrier. In 1957 an amendment to § 203(a)(15) of the Motor Carrier Act, 49 U.S.C. § 303(a)(15), limited the definition of contract carrier to persons contracting "with one person or a limited number of persons" for furnishing of transportation services. Following the passage of the 1957 amendments, the Commission, on its own motion, reviewed Mack's status as a contract carrier pursuant to section 212(c), 49 U.S.C. § 312(c).[1] In proceeding MC–105809 Sub-No. 9 the Commission concluded that even though Mack was serving 18 shippers it was still serving a "limited number" in compliance with the amended definition of contract carrier.

In 1969, Mack filed an application for an extension of its contract authority to permit it to serve a present shipper from Philadelphia to additional points in fourteen states. In proceeding MC–105809 Sub-No. 13 of the Commission, in effect, reversed its earlier determination and held that Mack was serving shippers in excess of the "limited number" permitted contract carriers. The application was thus denied although Mack was offered recourse to: (1) reduce the number of shippers served to conform to the restrictions placed upon contract carriers, or (2) convert to a common carrier by filing for a certificate of public convenience and necessity, or (3) take any other action deemed proper.

Initially Mack filed a proposal under which the number of shippers it contracted to serve would be reduced to nine. However, this proposal was rejected by the Commission. Thereafter, Mack sought to convert its entire operation from contract carrier to common carrier. It is the Commission's grant of this authority which is presently before us.

Essentially, two issues are presented:

I. Whether the Commission properly applied the test set forth in *Fischbach Trucking Company Common Carrier Application* (Fishbach), 61 M.C.C. 539 (1953) for determining "public convenience and necessity" to Mack's instant application; and

II. Whether the Commission's conclusion granting Mack's application for a certificate is based upon adequate findings supported by substantial evidence on the record as a whole.

**I.**

Section 207(a) of the Act provides in pertinent part:

[A] certificate shall be issued to any qualified applicant therefor, . . . if it is found that . . . the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied . . . .

The phrase "public convenience and necessity" is not defined in the Act, however, the purpose of the Motor Carrier Act of 1935 was to "leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity," *I.C.C. v. Parker*, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051 (1945).

---

1. 49 U.S.C. § 312 provides, in pertinent part:
   (c) The Commission shall examine each outstanding permit and may within one hundred and eighty days after August 22, 1957, institute a proceeding either upon its own initiative, or upon application of a permit holder actually in operation or upon complaint of an interested party, and after notice and hearing revoke a permit and issue in lieu thereof a certificate of public convenience and necessity, if it finds, first, that any person holding a

permit whose operations on August 22, 1957, do not conform with the definition of a contract carrier in section 303(a)(15) of this title as in force on and after August 22, 1957; second, are those of a common carrier; and third, are otherwise unlawful. Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit.

Consequently, the Commission is afforded a wide degree of administrative discretion in its decisions. However, the Commission must rationally articulate the reasoning supporting its decisions so that a reviewing authority can determine whether discretion was exercised within the statutory mandate. In *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1942), the Supreme Court stated, ". . . the orderly function of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." 318 U.S. at 94, 63 S.Ct. at 462. We will affirm a decision of the Commission acting within its discretion, even if the decision is of "less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, (Bowman) 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

Prior to the passage of the 1957 amendments, the Commission recognized in *Fischbach* that the distinction between contract and common carriage was not clearly drawn and that as a result many supposedly contract carriers had become in fact, common carriers. This occurred despite the fact that in many instances the operations were not essentially different from their original holding out. In ruling on the conversion application of one such contract carrier the Commission observed that:

> Obviously, carriers of this type who come before us with conversion applications seeking, in effect, to correct mistakes of the past to which we, as well as they, may have contributed, are in a class by themselves. Unless the facts are such as to show that their individual problems are of their own making in the sense that they knowingly claimed and exploited an incorrect status, there would appear to be certain equities in their favor. *Fischbach*, supra at 546.

The problems faced by the Commission in these circumstances ultimately led to the amendment of section 203(a)(15) of the Act, and the addition of section 212(c). Clearly Congress' intent was to preserve the basic distinctions between common and contract carriers.

The amendment to section 203(a)(15) restricted the definition of motor contract carriage to those carriers serving ". . . one person or a limited number of persons . . . ." The section does not, however, specify what shall constitute a "limited number of persons." It would, therefore, appear that it is for the Commission to determine under the facts of each case, whether a carrier serves a limited number of shippers. In 1962, after the proceeding in which it decided that for Mack 18 shippers was a limited number, the Commission defined "limited number," excluding certain unique situations, i. e., where carriage is highly specialized, as seven contracts. See: *Umthun Trucking Co. Ext.—Phosphatic Feed Supplements* (Umthun), 91 M.C.C. 691 (1962).

Under section 212(c) of the Act, enacted simultaneously with the amendment to section 203(a)(15), the Commission was directed to review outstanding contract permits and after notice and hearing revoke a permit and issue in its place a certificate of public convenience and necessity, if it found, essentially, that a contract permit holder no longer satisfied the amended definition and should from that point forward operate as a common carrier of the same commodities between the same points or within the same territory as authorized in the permit. After the 180 day period during which section 212(c) was applicable, conversion applications would be considered only under section 207(c).

In *Connell Transport Co., Inc., Conversion Application*, (Connell), 95 M.C.C. 312 (1964), the Commission articulated the general standard applicable in a conversion proceeding under section 207(c) subsequent to the 1957 amendments. In accordance with *Connell* a carrier seeking conversion from contract to common carrier status is required to produce evidence of past lawful operations under the authority sought to be converted and to offer shipper testimony

demonstrating a need for service as a common carrier rather than a contract carrier. The essential changes brought about by *Connell* in post-amendment cases are (1) a requirement of greater shipper support than was previously required by *Fischbach* and (2) a more strict view taken regarding the applicant's prior lawful activity.

With respect to Mack's post-amendment application to convert, the Commission applied the *Fischbach* standard rather than the more stringent *Connell* standard. Application of *Fischbach* in post-amendment cases is not without precedent. See: *T. T. Brooks Trucking Co., Inc.,* 86 M.C.C. 667 (1961); *Bankers Dispatch Corp., Conversion Application,* 110 M.C.C. 294 (1969). In our view such action is warranted here, as well, and, thus, will not be disturbed on appeal.

We believe that underlying the stiffer standard articulated in *Connell* is the assumption that subsequent to the 1957 amendments and the Commission's section 212(c) inquiries into the operations of contract carriers, any conversion applicant would, at that time, be serving only a "limited number" of shippers. It naturally followed that the Commission would require more extensive shipper support evidence in order to sustain a carrier's burden of proving public need for the proposed common carrier service than had previously been required. In addition, since presumably the distinction between contract and common carriage had been more clearly drawn the . . . mitigating factors, which contributed to the establishment in Fischbach of liberal criteria for section 207 conversions, have largely been obviated by the 1957 amendments. Carriers which at that time found that their operations had become those of common carriers because they were serving more than a limited number of shippers, or were neither assigning vehicles to the exclusive use of each customer nor performing service designed to meet each shipper's distinct need, were converted under section 212(c). Carriers, such as applicant herein, which were not converted and those which instituted interstate contract carri-

er service after August 22, 1957, must be presumed to have sought and obtained contract carrier authority since that date with full knowledge of the provisions of the amended statute and the restrictions which the 1957 amendments placed around the contract carrier operations. *Connell, supra* at 318.

We do not believe, however, that *Connell* meant to bar application of *Fischbach* even in a case, as in *Fischbach* or in the instant one, where the Commission was at least partly responsible for the applicant's dilemma. In other words where equities favor a more lenient standard the Commission ought to be permitted within its broad discretionary powers to make that determination.

■ The petitioners contend that the Commission ignored Mack's inaction respecting a reduction in the number of contract carriers it served after proceeding MC–105809 Sub-No. 13, and the decisions in *Umthun* and *Connell,* thereby permitting Mack to benefit from its own wrongdoing. As previously noted, however, in proceeding MC–105809 Sub-No. 9 Mack was found to be properly operating as a contract carrier while serving 18 shippers. Mack essentially maintained this status up to the time of its application to add on an additional shipper which was denied with recourse in proceeding MC–105809 Sub-No. 13. Thereafter, Mack was responsive to the Commission both by proposing to reduce its shippers to nine and, thus, drastically curtail its long-established service to a number of its shippers and, then, by filing the conversion application presently in issue. During this time it was operating within a level approved by the Commission. Under the circumstances the dilemma in which Mack found itself was caused, in part, by the Commission. The Commission, we think, properly recognized this and was justifiably less demanding in reviewing and approving Mack's conversion application.

II.

■ In order to be affirmed by us the decision of the Commission must also be

supported by substantial evidence on the record as a whole. *Illinois Central Railroad Co. v. Norfolk and Western Railway Co.,* 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ The petitioners allege that Mack has not presented a prima facie case by failing to supply the specific information required in *Novak Contract Carrier Application* (Novak), 103 M.C.C. 555 (1967). *Novak* requires that shippers supporting an application must show the commodities shipped or received, the points within which the traffic moved, the volume of freight to be tendered to the applicant, the present transportation services used and the deficiencies in existing service. The Commission determined that Mack had complied with the applicable standard of partial shipper support and a general holding out. The Commission reached the foregoing conclusion by reviewing evidence presented by Mack of past and current operations. In its report the Commission summarized the testimony of 15 shipper witnesses and found a desire among them to utilize the services of Mack. While the Commission ruled that with respect to Mack it was less important to show inadequacy in existing service, it did state that Mack made much needed night deliveries and had developed an innovative and specialized trailer for the transportation of department store goods. Mack's failure to fulfill the specific *Novak* requirements does not, in and of itself, require a reversal of the Commission's ruling. See: *American Farm Lines v. Black Ball,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *Twin City Freight, Inc. v. United States,* 360 F.Supp. 709 (D.Minn.1972). While not all of the specified information required by *Novak* was adduced, the petitioners were not prejudiced thereby and there was, in our view, sufficient evidence of a public need for conversion from which the Commission could conclude that the application should be granted.

■ On the other side of the coin, the negative evidence was not compelling. It is contended by the petitioners that the Commission overlooked evidence of the future harm that could be caused by Mack's expansion and diversion of freight from existing carriers. While the petitioners did introduce evidence of operations subject to possible diversion by Mack, the Commission concluded that petitioners would not be adversely affected. It found that petitioners currently were not experiencing any competition from Mack despite the fact that Mack served a large number of shippers. Further, the shippers' utilization of petitioners' services was not expected to be curtailed in the future. In any event the possibility of economic loss by itself is not sufficient to deny a grant of authority that is otherwise in the public interest. *Bowman, supra; Schaffer Transport Co. v. United States,* 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957); *United States v. Pierce Auto Lines,* 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

■ Finally petitioners maintain that the Commission ignored substantial evidence of future discrimination by Mack Warehouse Corporation, which is owned by substantially the same family partnership that owns Mack. It is contended by petitioners that Mack presently and in the future could discriminate by charging more favorable storage rates to those who use both Mack and Mack Warehouse Corporation.

Findings were made based on the evidence that different storage rates were charged to different customers, but the variation was determined to be due to such factors as value, nature, volume and weight of the commodity stored. The Commission also found and the evidence establishes that it was Mack Warehouse Corporation's policy to have a shipper of the owner's choice move the goods and thus Mack was not in a position to control the routing of goods. Petitioners argue, however, that the very possibility of shipper discrimination is sufficient to prevent the grant of an application and in support cite *Produce Terminal Trucking Co., Contract Carrier Application* (Produce), 100 M.C.C. 695 (1966) and *Alter Trucking and Terminal Corp. v. United*

*States* (Alter), 299 F.Supp. 819 (S.D.Iowa 1969). *Produce* is distinguishable, however, on the basis that the applicant was a wholly owned subsidiary of the warehouse company involved, the warehouse occasionally designated the carrier for its customers and the warehouse company shipped some of its own items in competition with its customers.

In *Alter* the carrier, unlike Mack, was controlled by its principal support shipper. There the Court recognized a principle which we find applicable here, that the question of possible shipper discrimination and favoritism is a matter particularly suited for the expertise of the Commission.

We find, based on the record as a whole, that there is substantial evidence in support of the Commission's decision and, accordingly, the petition for review will be denied.

ROSENN, Circuit Judge, dissenting.

I agree with the majority that under the special circumstances of this case the Interstate Commerce Commission ("ICC") was justified in relaxing the standards of *Connell Transport Co., Conversion Application,* 95 M.C.C. 312 (1964), when it acted on Mack's conversion application. I, too, believe that the ICC's contribution to the dilemma in which Mack found itself warranted the application of a more lenient standard in determining whether Mack's contract permit should be converted to a common carrier certificate. In my view, however, the ICC never defined the "lenient standard" that it purported to apply. That omission deprives this court of sufficient knowledge of the reasons underlying the Commission's conclusions and prevents meaningful review. *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). I am therefore constrained to dissent.

The Interstate Commerce Commission did not issue an opinion of its own in the instant case, but instead affirmed and adopted the decision of an administrative law judge. That decision (hereinafter referred to as "the Commission's decision") noted that under *Fischbach Trucking Co., Common Carrier Application,* 61 M.C.C. 539 (1953), carriers that seek conversion applications in order to correct mistakes to which the ICC has contributed have "certain equities in their favor." *Id.* at 546. "Such carriers," the Commission's decision continued,

> must still meet their full burden of proving public need for their operations as a common rather than contract carrier but the standards established are more lenient than usual. See *T. T. Brooks Trucking Co., Inc., Extension—Akron, Ohio,* 86 M.C.C. 667 (1961), in which conversion was authorized on the basis of partial shipper support and a general holding out; *Eastern States Transp., Inc., Common Carrier Application,* 105 M.C.C. 443 (1967); and *Bankers Dispatch Corp., Conversion Application,* 110 M.C.C. 294 (1969), in which the unusual contract to common carriage application was decided on analogous principles. Thus, conversion of applicants' permit to a certificate is warranted.

This passage is the *only* discussion of the "lenient standard" governing Mack's application that appears in the Commission's decision.

The majority seems to conclude that the quoted passage constitutes an articulation of the standard applicable to conversion cases such as the instant one—the standard being "partial shipper support and a general holding out." *See* Maj. Op. at 620. I cannot agree. Those eight words do not function as the definition of any standard for this case; rather, when read in context, they merely describe the Commission's decision in *T. T. Brooks Trucking Co.,* 86 M.C.C. 667 (1961). In transforming an account of a case into an announcement of a standard for adjudication, the majority ignores the essential requirement that an administrative agency lucidly state the reasons that support its action.[1] We have absolutely no

---

1. I recognize that "[a]n agency 'may articulate the basis of its order by reference to other decisions.'" *Atchison, T. & S. F. Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 807, 93 S.Ct.

basis for determining whether the Commission considered "the relevant factors and whether there has been clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The majority's *post hoc* attempts to rationalize the actions of an administrative agency are not properly a part of the reviewing process. We may not rewrite an agency's decision to provide the requisite reasoned basis for its conclusions. *Bowman Transportation, Inc., supra,* 419 U.S. at 285–86, 95 S.Ct. 438; *Atchison, T. & S. F. Ry. v. Wichita Board of Trade,* 412 U.S. 800, 807, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973).

Even assuming *arguendo* that the quoted passage does define the "lenient standard," I believe that the ostensible definition— "partial shipper support and a general holding out"—is critically deficient. Such a standard is, to my mind, hopelessly vague, requiring a reviewing court to speculate as to both the meaning and the application of the standard. Without additional explanation, those eight words provide no meaningful standard to guide this court in assessing whether Mack made the showing necessary to support its conversion application. *See generally NLRB v. Armcor Industries, Inc.,* 535 F.2d 239, 245 (3d Cir. 1976).

Because I think that the Commission never defined the "lenient standard," I am, of course, unable to say whether substantial evidence in the record as a whole supports the Commission's decision to approve Mack's conversion to an extensive common carrier operation. Evidence cannot be weighed unless the measure be known. Still, I cannot help but observe that on any scale the evidence adduced in support of Mack's application was not heavy.

By the Commission's own admission, carriers in Mack's position "must still meet their full burden of proving public need for their operations as a common rather than contract carrier . . . ." To establish public need, Mack offered the testimony of fifteen shipper witnesses. Of those fifteen, at least thirteen, and possibly fourteen, were current users of Mack. Nine shippers seemed to say no more than that they were satisfied with the service they were receiving from Mack and wanted that service to continue. Two shippers suggested that Mack provided service that they could not obtain elsewhere. Three shippers seemed to have complaints with the service supplied by existing common carriers. One shipper testified that it did not currently use Mack, but that if the conversion application were granted, it would use Mack as a backup service for its private carriage operation.

Did this testimony establish public need for Mack's operations as a common carrier? I reiterate that without knowing the standard governing what showing would suffice, I am unable to say. But the less-than-trenchant nature of the testimony offered surely underscores the need for a clear and complete articulation of that standard—a need that the ICC's decision left unfulfilled.

I would therefore remand the case to the Interstate Commerce Commission for a determination of the standard governing Mack's conversion application, and for a reevaluation of the evidence in light of that standard.

2367, 2375, 37 L.Ed.2d 350 (1973) (plurality opinion), *quoting NLRB v. Metropolitan Life Ins. Co.,* 380 U.S. 438, 443 n. 6, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). But it is not at all clear to me that this is what the ICC did in the instant case; I am unwilling to concede that the description of the standard applied in *T. T. Brooks,* without more, indicates that the same standard was the one being applied in this case. I do not read *Wichita Board of Trade, supra,* as

establishing that the mere citation of a case always provides sufficient explanation for an agency's action. Such a canon would effectively eliminate the "simple but fundamental rule of administrative law" that an agency must set forth clearly the grounds on which it acted. *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).