590 F.2d 290
 100 L.R.R.M. (BNA) 2719, 85 Lab.Cas. P 11,073
 BECK CORPORATION d/b/a Jessie Beck's Riverside Hotel/Casino,
Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Hotel, Motel, Restaurant Employees and Bartenders Union,
Local 86, Intervenors.
 No. 77-3210.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 13, 1978.
 
 Robert V. Magor (argued), Severson, Werson, Berke & Melchior, San Francisco, Cal., for petitioner.
 Susan Papadopoulos, Atty. (argued), Washington, D. C., W. David Holsberry, San Francisco, Cal. (argued), Davis, Cowell & Bowe, San Francisco, Cal., for respondent.
 Petition to Review a Decision of the National Labor Relations Board.
 Before: MERRILL and CHOY, Circuit Judges, and TANNER*, District Judge.
 PER CURIAM:
 
 
 1
 The Riverside Hotel/Casino Company has petitioned this court to review an order of the National Labor Relations Board directing it to bargain with the Hotel-Motel Restaurant Employees and Bartenders Union, Local 86, AFL-CIO. The Board decided Riverside had violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by refusing to bargain with the Union after the Union had won an election and had been certified as the bargaining representative of the manual employees of the hotel. The bargaining unit was composed of:
 
 
 2
 All full-time and regular part-time employees of the Employer's Reno, Nevada operation, including engineering department employees, the stagehand, receiving clerk, and warehouse laborers; but excluding front desk clerks, PBX operators, reservation clerks, night auditor, booth attendants in the coupon redemption center, employees in the casino, administration and security departments, guards and supervisors as defined in the Act.
 
 
 3
 Riverside intentionally refused to bargain with the Union in order to obtain judicial review of the validity of the representation election. Riverside's primary contention is that the Board's determination of the appropriate bargaining unit was controlled by the extent of Union organization, in violation of § 9(c)(5) of the Act, and that the Board's order should be set aside. The Company also asserts (1) that the Union made substantial and material misrepresentations to the five employees of the Engineering Department that significantly impaired the election process,[1] (2) that the Board agent prevented 26 employees from voting by not setting the election on a pay day, and (3) that a Board agent erred when he voided a ballot that had markings in both the "yes" and "no" boxes.[2]
 
 
 4
 The Board cross-petitions for enforcement. The Board's decision is reported at 231 N.L.R.B. No. 125 (1977). The Board's decision rests on findings of fact that are supported by substantial evidence in the record as a whole, Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Randall P. Kane, Inc., 581 F.2d 215, 218 (9th Cir. 1978). The order of the Board is therefore enforced.
 
 FACTS
 
 5
 Riverside operates a hotel, bar, restaurant, and gaming complex in Reno, Nevada. The operation is divided into the following departments: hotel, maintenance, restaurant, bar, engineering, entertainment, casino, administration, and security. The parties stipulated that employees in the casino, administration, and security department should be excluded from the unit, but disagreed on the placement of employees in the engineering and entertainment departments, as well as the front desk and coupon redemption center employees in the hotel department and the receiving clerk and three laborers in the maintenance department. The Union sought to exclude the disputed employees from the unit, while the Company wished to include them.
 
 
 6
 The engineering department consists of six semi-skilled employees who are primarily engaged in the maintenance and repair of the Company's facility and thus often work alongside other employees. They are hourly paid and punch a time clock. They receive the same fringe benefits and have the same access to facilities such as the employee dining area and the employee recreation room as the employees which the Union seeks to represent.
 
 
 7
 The entertainment department includes one stage hand who, along with his supervisor, sets up lighting and stage equipment for entertainers.
 
 
 8
 The hotel department consists of elevator operators, bellmen, maids, an inspectress, a seamstress, front desk clerks, PBX operators, a reservations clerk, a night auditor, and booth attendants in the coupon redemption center. The front desk clerks register hotel guests and summon bellmen to take guests and their luggage to rooms. The PBX operators, who work behind the front desk, receive incoming calls, take messages, and place long distance phone calls. The reservations clerk, whose office is behind the front desk, receives reservations, assigns rooms, and substitutes at the front desk. The booth attendants, who work in their own area, issue coupons for free drinks, food, and gambling and keep control of the coupons issued. The manual employees elevator operators, bellmen, maids, inspectress, and seamstress have separate immediate supervision from front desk personnel and booth attendants. The manual employees also wear uniforms, while the others wear street clothes.
 
 ANALYSIS
 Appropriate Bargaining Unit
 
 9
 The issue of unit determination is within the particular expertise of the Board, vested in that body by statute, 29 U.S.C. § 159(b), and a Board decision is rarely disturbed. Hence, judicial intervention should be confined to instances where there has been an abuse of discretion. It is not necessary that the Board choose the most appropriate bargaining unit; it is sufficient if the unit chosen is within the range of units appropriate under the circumstances. NLRB v. Mercy Hospitals of Sacramento, Inc.,589 F.2d 968, 972 (9th Cir. 1978); NLRB v. Lerner Stores Corp., 506 F.2d 706, 707 (9th Cir. 1974). Likewise, in arriving at a decision, the Board can consider the extent to which employees have organized, so long as the extent of organization is not the controlling factor. NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 441-42, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); Lerner Stores, 506 F.2d at 708. Riverside contends that extent of organization was the controlling reason for the Board's decision.
 
 
 10
 Until its decision in John Hammonds, 160 N.L.R.B. 927, 930 (1966), Enforcement granted sub nom. NLRB v. Hammonds, 387 F.2d 646 (4th Cir. 1967), the Board's policy for the hotel industry was to find only overall units to be appropriate. In John Hammonds the Board noted that its experience had indicated that the operations of every hotel were not so highly integrated, nor all employees so similar, as to negate the existence of a separate community of interest among smaller groupings. The Board therefore held that it would "(t) hereafter consider each case on the facts peculiar to it in order to decide wherein lies the true community of interest among particular employees" of a hotel. Id. Thus, the Board applies to the hotel industry the general criteria used for determining units in other industries. Among the factors the Board considers are: whether the employees constitute a distinct, identifiable group, the differences in the skills and functions of particular employee groups, their separate supervision, the frequency of contact with other employees, the extent of employee integration, and differences in wages and hours. Hotel Equities, 171 N.L.R.B. 1347, 1348 (1968), Modified on other grounds, 180 N.L.R.B. 489 (1969).
 
 
 11
 There is substantial evidence in the record to demonstrate that there is a clear functional distinction between the essentially clerical duties of the excluded employees and the manual duties of the unit employees. The latter perform various physical labors such as preparing or serving food or beverages, carrying luggage, cleaning rooms, and otherwise maintaining the Riverside facilities and equipment. The excluded employees work in ordinary street clothes rather than uniforms. They have separate immediate supervision and their work is confined to locations at or near the front desk. Moreover, the rare transfer of an employee from one of the unit classifications to one of the excluded classifications, or vice-versa, does not constitute a significant degree of interchange. In view of all these factors, the Board acted well within its discretion in concluding that the excluded employees did not share such a community of interest with the unit employees as to require their inclusion in the unit. The Board's unit designation does not constitute an abuse of discretion and it should be affirmed.
 
 The Election Date
 
 12
 Since the election was conducted in full conformance with Board policy, the Court's review is limited to a determination of whether the scheduling of the election constituted an abuse of the Board's wide discretion in supervising elections. NLRB v. Tri-City Linen Supply, 579 F.2d 51, 57 (9th Cir. 1978). Such discretion includes the determination of whether or not the opportunity afforded all eligible voters to exercise their rights was sufficiently "adequate" or "equal" as to reflect accurately the "majority" required by the Labor Act. International Telephone & Telegraph Corp. v. NLRB,294 F.2d 393, 395 (9th Cir. 1961).
 
 
 13
 Riverside asserts that because 26 employees were regularly scheduled not to work on the date set for the election, the Board arbitrarily disenfranchised these employees. Riverside had requested that the election be held on a pay day so as to insure that all their employees would have reason to come to work. Given the fact that 142 employees voted in the election and that the 26 employees were available to come and vote if they chose to, the chosen election date was not an abuse of discretion. A majority of the employees had an adequate and equal opportunity to exercise their voting right and that is all the Labor Act requires.CONCLUSION
 
 
 14
 The Board's designation of the appropriate bargaining unit and the date chosen for the election did not constitute an abuse of discretion. The Company's petition for review is DISMISSED. The Board's order directing Riverside to bargain with the Union will be ENFORCED.
 
 
 
 *
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 The Union won the election by a vote of 96 to 46. Therefore, assuming that the votes of the five engineering employees were "yes" votes and should be disregarded because they may have been unduly influenced by the alleged misrepresentations, the Union would still have received 91 votes and retained a substantial majority. Because a change in these votes could not affect the result of the election, we do not consider Beck's allegations of misrepresentations. See Carlisle Paper Box Co. v. NLRB, 398 F.2d 1, 6 (3rd Cir. 1968); Southwest Community Hosp. & Serv. Employees Union Local No. 579, 219 N.L.R.B. 351, 353 (1975)
 
 
 [2]
 We need not reach this issue for the reasons stated in note 1 Supra