COLUMBUS AND SOUTHERN OHIO
ELECTRIC COMPANY, Petitioner,

v.

Douglas M. COSTLE, Administrator, United States Environmental Protection Agency, and United States Environmental Protection Agency, Respondents.

Nos. 78–3197, 78–3644.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1979.

Decided Sept. 30, 1980.

J. Jeffrey McNealey, Porter, Wright, Morris & Arthur, Robert L. Brubaker, Columbus, Ohio, for petitioner in both cases.

Mary Ann Muirhead, Environmental Protection Agency, Paul M. Kaplow, Ronald C. Hausmann, Pollution Control Section, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for respondents in both cases.

Before EDWARDS, Chief Judge, and PHILLIPS and PECK, Senior Circuit Judges.

JOHN W. PECK, Senior Circuit Judge.

Petitioner, the Columbus and Southern Ohio Electric Co. ("C&SOE"), has asked this Court to set aside the United States Environmental Protection Agency's designation of parts of Coshocton and Pickaway Counties, Ohio, as nonattainment of the national air-quality standard for sulfur dioxide ("SO$_2$"). This case is but one of many appeals from EPA's air-quality status designations in Ohio; the history of these appeals has already been set forth in our opinion in *Republic Steel Corp. v. Costle*, 621 F.2d 797, at 797–802 (6th Cir. 1980). Nevertheless, the exact sequence of the relevant events in these cases is significant, and a short chronology is necessary to the explanation of our decision.

Section 107 of the Clean Air Act, as amended, required all states to submit lists of air-quality control regions which were problem areas where national air-quality standards had not been attained or where attainment of these standards could not be maintained. *See* 42 U.S.C.A. § 7407(d)(1) (Supp.1979). The Administrator of the U.S. EPA was to promulgate these lists "with such modifications as he deems necessary." *Id.* § 7407(d)(2). A nonattainment designation would increase the likelihood of the application of a strict licensing system for the construction or modification of air pollution sources.

On March 3, 1978, the EPA published attainment status designations for Ohio; these designations were termed "final rules" by the agency. 43 Fed.Reg. 8962 (1978). EPA had the necessary "good cause" to accept comments on these final rules only after the rules' promulgation. *Republic Steel, supra,* at 803–804.

On October 5, 1978, after accepting comments from petitioners, EPA promulgated amended SO$_2$ designations for Coshocton and Pickaway Counties. This second set of designations reduced the nonattainment areas in these counties to Franklin Township in Coshocton County and Harrison Town-

ship in Pickaway County. EPA was not dissuaded from making these nonattainment designations by petitioner's proffered air-quality monitoring results—results which purported to show attainment of federal air-quality standards even in these two more limited regions. The agency based its affirmance of the nonattainment designations of the two townships on EPA's own SO$_2$ computer modeling analysis. 43 Fed. Reg. 46000 (1978).

## I. COSHOCTON COUNTY

Petitioner asserts that the SO$_2$ dispersion model used by EPA in making its Coshocton County attainment designations was the same one used by the agency in setting emissions limits for individual pollution sources in Coshocton in 1977. In 1978, this Court ordered reconsideration of those limits by the agency; at that time we expressly held that one element [1] of the model used by the agency lacked a rational basis in the administrative record. *See Cincinnati Gas & Elec. Co. v. EPA*, 578 F.2d 660, 662–65 (6th Cir.), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1017, 59 L.Ed.2d 72 (1978). In the *CG&E* case we set aside EPA's emission limits for petitioner's plants and remanded to the agency for reconsideration of certain computer air-quality modeling practices. *See CG&E, supra,* at 578 F.2d 665.

The present record gives no indication that the reconsideration mandated by this Court has ever been undertaken. EPA has based its nonattainment designation for Coshocton County on the same modeling which this Court had already found to be unsupported by the EPA's own records. The agency offered this prospective cure for this faulty rulemaking in its brief:

On February 7, 1979, the Administrator published a notice which sets forth an additional technical basis for the use of the Class A [computer modeling] assumption. 44 Fed.Reg. 7793. The notice solicited public comment and the agency at present is evaluating comments received

before reaching ground level. *See CG&E, supra,* 578 F.2d 662–64.

---

1. The element was the so-called "class A assumption," which deals with the rate at which emitted pollutants are diluted by ambient air

in response. Petitioners will have an opportunity to challenge the new record before this Court after the agency publishes its response to those comments. If the Administrator determines that the assumption should be changed, a new modeling analysis will be conducted and, if necessary, the designation will be changed.

■ It is rather late in the development of administrative law to argue that an agency may offer *post hoc* bases for a prior decision. *See, e. g., Federal Power Comm. v. Texaco, Inc.,* 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974); *NLRB v. Metropolitan Life,* 380 U.S. 438, 442–44, 85 S.Ct. 1061, 1063–64, 13 L.Ed.2d 951 (1965); *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962). The judicial rule barring *post hoc* rationales for agency action applies to "informal" rulemaking as well as to agency adjudications. *Tabor v. Joint Board for Enrollment of Actuaries,* 566 F.2d 705, 710 (D.C.Cir.1977).

■ EPA's failure to give a timely rationale for its Coshocton County designation cannot be cured by any participation by C&SOE in a separate, future rulemaking procedure. Past agency caprice may not be remedied by a promise of future agency fairness. We therefore grant C&SOE's petition regarding EPA's Franklin Township nonattainment designation, and remand the case to the agency for development of the instant record, especially as it deals with EPA's use of the "Class A assumption" in its computer modeling of Coshocton County's air quality.

## II. PICKAWAY COUNTY (HARRISON TOWNSHIP)

Petitioner's comments on EPA's initial Pickaway County nonattainment designation embraced extensive air–quality monitoring results. These data purportedly showed that the air surrounding C&SOE's Pickaway County plant met national air-quality standards. EPA disregarded these data, saying that petitioner's monitors were not at those points where violations of pollution standards were likely to occur. C&SOE contends that it was arbitrary and capricious for EPA to dismiss these data and to rely instead on computer modeling which reflected "improbable or impossible hypothetical future circumstances rather than actual . . . air quality."

■ We have already held that since the Clean Air Act itself authorizes use of computer modeling in making attainment status designations, use of such models is not per se arbitrary and capricious. *Republic Steel, supra,* at 804–806. More recently, in *PPG Industries v. Costle,* 630 F.2d 462 (6th Cir. 1980), we held that it was lawful under the Clean Air Act for EPA to base nonattainment designations on predictions of future violations of air-quality standards. *See id.* at 464–465. Therefore, polluters in a currently "clean" region can substantively attack a nonattainment designation of their region only by showing that EPA's predictions of future pollution levels are unsupported by the record. Monitored data tending to show mere past attainment of air-quality standards within an air-quality control region do not per se show the unreliability of EPA's predictions, although such data might show that EPA's modeling techniques were flawed. EPA contends that C&SOE's data cannot be used for this purpose, since the utility's monitors were not placed where EPA's model predicted the highest $SO_2$ concentrations would occur. C&SOE claims that this is an irrebuttable assertion, since EPA never disclosed the sites of the "receptors" hypothesized in its computer model. If the utility's claim were true, the agency's disregard of C&SOE's monitored data would be peremptory and arbitrary. But the claim is not true. The locations of EPA's hypothetical receptors were made a matter of public record in the technical support documents which accompanied EPA's promulgation in 1976 of emissions limits for Ohio pollution sources.[2] Petitioner's monitors were in fact not placed at the "hotspots" predicted by EPA's mod-

---

**2.** The locations of the receptors were given in *Technical Support Document: Sulfur Dioxide*

*Control Strategy for the State of Ohio,* EPA–905/2-76-002 (Aug. 1976). We notice this

el. We therefore cannot say that the agency's refusal to label Pickaway County attainment for $SO_2$ after its review of petitioner's monitored data was arbitrary and capricious. Petitioner's data did not unequivocally call EPA's computer modeling of Pickaway County into question.

document not only because its availability at over 20 locations in Ohio was announced by EPA in the course of setting emissions limits in Ohio, 41 Fed.Reg. 36327 (1976), but also because portions of the document were included by petitioners themselves in an appendix filed in *CG&E, supra.*

## III. CONCLUSION

For the reasons outlined above, we remand this cause to the EPA for reconsideration of the agency's Coshocton County designation. We deny the relief sought in C&SOE's petition for review of EPA's Pickaway County designation.

Counsel for EPA have caused confusion in the present case by referring to this Technical Support Document as "Rec[ord] Doc[ument] No. 18." Unfortunately, EPA's reference was to the record in *Republic Steel, supra,* a related but discrete set of cases.

Using the information contained in EPA's *Technical Support Document, supra,* the location of EPA's hypothetical receptors may be imposed on the map with the following result:

The four heavier lines indicate distances and directions to EPA's receptors. The diagram clearly shows the divergent placement of the two sets of receptors.